Samuel A. ENGLE and Dorothy I. Engle, Plaintiffs,

v.

SHAPERT CONSTRUCTION COMPANY, a Pennsylvania Corporation, and Paul E. Shapert, Individually and as President of Shapert Construction Company, Inc., and their Agents, Salesmen, Employees acting in Concert with them or at their Direction or under their Control, Defendants.

Civ. A. No. 74–491.

United States District Court, M. D. Pennsylvania.

Feb. 9, 1978.

Joseph A. Campagna, Jr., Peter B. Macky, Sunbury, Pa., Jon C. Lyons, Williamsport, Pa., Central Susquehanna Valley Legal Services, for plaintiffs.

Louis C. LaLumere, Pittsburgh, Pa., for defendants.

## OPINION

HERMAN, District Judge.

This case arises from a contract for the installation of steel siding on the house of Plaintiffs, Samuel and Dorothy Engle. As more fully set forth below, disputes arose as to the terms of the contract and the quality of the work performed, with the result being that Plaintiffs refused to consummate a loan from the Western Pennsylvania National Bank which had been arranged to finance the job. Defendant Shapert, unable to secure payment from the bank under the proposed loan, confessed judgment against Plaintiffs pursuant to a cognovit note which Plaintiffs had signed in conjunction with the contract documents. After a writ of execution was issued, Plaintiffs filed this suit, alleging violations of the Consumer Credit Protection Act and violation of their constitutional right to due process of law, and the late Chief Judge Sheridan issued a temporary restraining order restraining a sheriff's sale of Plaintiffs' home. Defendants then counterclaimed for the contract price.

After several continuances, the case was tried before Judge Sheridan without a jury on July 6 and 7, 1976. Judge Sheridan died shortly thereafter without having rendered a decision. This decision is based on review of the trial transcript and exhibits, and arguments of counsel heard on May 19, 1977.

## I. FINDINGS OF FACT

1. The Plaintiffs, Samuel A. Engle, age 75, and Dorothy I. Engle, age 60 reside at 437 Vine Street, Sunbury, Northumberland County, Pennsylvania.[1] Plaintiffs' sole

---

1. The house with which we are here involved.

sources of income are a small pension and Social Security disability payments, totalling about $250.00 per month.

2. The Defendant Shapert Construction Company, is a corporation incorporated in and registered with the Commonwealth of Pennsylvania, having its principal place of business at 3722 Perrysville Avenue, Allegheny County, Pittsburgh, Pennsylvania.

3. The Defendant Paul E. Shapert is President and principal executive officer of Shapert Construction Company, Inc., and is a dealer licensed under Title I of the National Housing Act, 12 U.S.C.A. Section 1703(a).

4. The agents, salesmen and employees of Shapert Construction Company, Inc., as of October, 1973, all having been hired by Paul E. Shapert, included Patsy Arabia, also known as "Pat Rizzo", and included Herbert Keller, Ken Zerfoss and David Kaplan.

5. The regular and normal course of business of Shapert Construction Company, Inc., its officers, agents and employees, was the sale door-to-door of home improvement products, primarily aluminum and steel siding, by use of installment sales contracts.

6. The regular and normal financing of said contracts in October, 1973 was by loans to the dealer, Shapert Construction Company, Inc., from Western Pennsylvania National Bank, having its principal place of business in Pittsburgh, Pennsylvania.

7. On October 9, 1973 Patsy Arabia, as a salesman and agent for Shapert Construction Company, Inc., made an unsolicited visit to the Engle residence, identified himself as "Pat Rizzo" of Shapert Construction Company, Inc., and told the Engles their home had been selected for promotional advertising if they would purchase siding for the entire home.

8. During his visit, despite numerous refusals by the Engles, agent Arabia continued with various forms of inducements, including statements that:·

 a. the home location was ideal for advertising;

 b. a "special price" would include installing two doors and four windows, for a total price, with siding on the entire home, of $3,000.00;

 c. free gifts, $25.00 referral fees and job offers would be made;

 d. the first payment would not be due for six months, and flexible payment terms would be available if the Engles' income were interrupted;

 e. disability and life insurance was available for Mr. Engle.

9. The Engles finally signed a contract, dated October 9, 1973 for "siding on entire home", foil insulation, white trim, two doors and four windows, checking all lumber on home and with "all work to be of first class quality", at a price of $3,690.00.

10. The contract documents and loan application were prepared by the salesman, Patsy Arabia, and presented to the Engles for signature without fully explaining their contents. One copy of a form containing Truth in Lending disclosures was given to the Engles at that time.

11. On October 12, 1973 Paul Shapert called the Engles and informed them that he would be out very soon to begin installation.

12. On October 16, 1973 Paul Shapert and two employees arrived at the Engle home to·begin installation of the siding.

13. After work had begun Paul Shapert told Mrs. Engle that the windows and doors called for in the original contract could not be installed due to a strike at the manufacturer's factory. He further informed her that the fourth wall of the Engle house, which faces the neighboring house, could not be covered with siding at the agreed upon price.

14. On or about October 19, 1973 Paul Shapert fold Mrs. Engle that the original contract was "worthless" and induced the Engles to sign a second contract, also at a price of $3,690.00, but providing for siding on only three sides of the house, with no doors, windows or trim included. The contract was backdated to October 9, 1973. Among the papers signed by the Engles at this time was a note containing a warrant of attorney to confess judgment, the signif-

icance of which was not explained. No further disclosures pursuant to the Truth in Lending Act were made.

15. Upon learning Mr. Engle's true age, a representative of Western Pennsylvania National Bank informed Mrs. Engle that no insurance could be provided in connection with the loan.

16. At some time during the course of the work on her home, in a telephone conversation with a representative of Western Pennsylvania National Bank, Mrs. Engle expressed her dissatisfaction with the terms of the contract and the quality of the work being done. As a result of Mrs. Engle's dissatisfaction the bank refused to pay the proceeds of the loan to Shapert.

17. On October 19, 1973, work on Plaintiffs' home was purportedly completed, but with no insulation having been installed behind some portions of the siding, no siding having been installed on the fourth wall, and no doors or windows hung.

18. In the course of construction, with Plaintiffs' permission, Shapert and his employees had removed an air conditioner to facilitate the installation of the siding. No effort was made to patch the hole in the wall of the house where the air conditioner had been removed, but Shapert and his employees merely covered the hole with siding.

19. To facilitate the installation of siding, Shapert also received Plaintiffs' permission to temporarily remove the roof over the front porch stoop, agreeing to replace it when the job was finished. When work was finished Shapert did not replace the roof, but left it lying in Plaintiffs' yard, where it remained until it rotted and was discarded by Plaintiffs.

20. On or about October 22, 1973 Shapert secured the Engles' signatures on a Completion Certificate and a handwritten document, addressed "To Whom It May Concern," expressing the Engles' satisfaction with the work. Despite the signing of these documents the bank refused to pay

Shapert because of Mrs. Engle's previous oral objections.

21. In an attempt to induce Mrs. Engle to withdraw her objections and finalize the loan, Shapert gave her $270.00 to procure mortgage-life insurance on the open market. Due to Mr. Engle's age and physical condition, no such insurance could be secured, and on December 14, 1973, Shapert returned to the Engle home and demanded return of the money. Mrs. Engle returned $260.00, keeping $10.00 to cover the cost of telephone calls made by Shapert from her home.

22. On December 14, 1973, Shapert entered a judgment by confession against the Engles in the Common Pleas Court of Northumberland County.

23. On February 27, 1974 a writ of execution issued against the Engles' property pursuant to the confessed judgment.

## II. DISCUSSION

### A. Jurisdiction

Jurisdiction is based on the Consumer Credit Protection Act, popularly known as the Truth in Lending Act, 15 U.S.C. § 1601 et seq.[2] Plaintiffs also invoke jurisdiction of their constitutional claim pursuant to 28 U.S.C. § 1331. The Court also has jurisdiction of Defendants' counterclaim for the contract price, as it arises from the same transaction as Plaintiffs' claim, and is thus a compulsory counterclaim. Rule 13(a), Federal Rules of Civil Procedure; *Rollins v. Sears, Roebuck and Company*, 71 F.R.D. 540 (E.D.La.1976).

### B. The Contract

■ In regard to Shapert's counterclaim for the contract price, Plaintiffs urge the Court to conclude that the contract is unconscionable and refuse to enforce it on that basis. However, we believe that neither the terms of the first nor the second contract, as written, appear to be so unfavorable to the Engles that the transaction

2. Jurisdiction in the District Courts of claims arising under the Truth in Lending Act is specifically provided at 15 U.S.C. § 1640(e).

should be voided for unconscionability, and that the problem can be better approached through more traditional concepts of contract law.

■ The original contract called for installation of siding on all four sides of the house and the installation of doors and windows. Shapert became bound by this contract, if not before, when he came out to the Engle home and began work. His subsequent attempt to modify the contract to provide for substantially less work at the same price was clearly unenforceable for want of consideration. *Nicolella v. Palmer*, 432 Pa. 502, 248 A.2d 20 (1968). Thus Shapert's refusal to do the work called for in the original contract at the agreed upon price constituted a material breach which justified the Engles' refusal to pay the contract price. *Sisney v. Diffenderffer*, 323 Pa. 337, 185 A. 830 (1936).

■ Although Shapert's work on the Engles' home has been so defective as to be of little value to them, he has nonetheless installed approximately a thousand dollars worth of material. (See Transcript of Proceedings at 111). We believe the Engles have benefited from the transaction by at least that amount. We conclude, below, that Shapert is liable to the Engles in the amount of a thousand dollars for violations of the Truth in Lending Act. We think it fair that the thousand dollars by which the Engles have benefited be set off against the statutory penalty, and no money judgment be entered in favor of either party in this suit.

## C. Confession of Judgment

The testimony of Mrs. Engle establishes that the Engles signed the cognovit note attached to the second contract with no knowledge of its meaning or possible consequences. As more fully discussed below, the Truth in Lending disclosures given at the time of execution of the first contract did not serve to alert the Engles to the possibility that their house might be lost without an opportunity for a hearing. Nor was there any attempt to explain this possibility at the time the note itself was signed.

■■ Entry of judgment without notice or an opportunity to be heard, in the absence of a knowing and intelligent waiver of those rights clearly violated the Engles' right to due process. *Swarb v. Lennox*, 314 F.Supp. 1091 (E.D.Pa.1970), aff'd, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972). It is significant that, when given an opportunity to present a defense to Shapert's claim in this Court, the Engles have prevailed. It appears that the confessed judgment could be stricken if the Engles were to raise our decision in their favor in state proceedings, *See* Pa.R.Civ.P. 2959. However, we do not believe that they should be put to this additional burden to vindicate their rights, and accordingly, Shapert will be permanently enjoined from enforcing the confessed judgment.

## D. Truth in Lending Act

In this consumer transaction we discern four violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and "Regulation Z" promulgated thereunder by the Federal Reserve Board, 12 C.F.R., Part 226. Two of these violations arise from the use of the cognovit note discussed above.

■ The acceleration clause contained in the cognovit note constitutes a charge payable in the event of default and should have been mentioned along with other such charges on the disclosure statement (Plaintiff's Exhibit 3). The disclosure form contains under the heading "Delinquency Charges" the following information:

"If any installment to be paid hereunder shall be delinquent for more than ten (10) days there shall be due and payable hereunder to the holder of the note evidencing this indebtedness, in addition to the above debt, a delinquency charge of five (5%) cents for each dollar due and payable for the purpose of defraying the expense of handling said delinquent payment. This charge shall not exceed five ($5.00) dollars in respect of any one such late payment. Such delinquency charges shall become at once due and payable after the ten (10) day period, or may be collected with the last installment."

There is no mention of the clause in the note giving the holder the option, upon default, of declaring the full amount of the note due and confessing judgment for that amount. This omission clearly misleads the consumer as to the burdens that will be imposed in the event of default and is thus in violation of § 226.8(b)(4) of Regulation Z and 15 U.S.C. § 1638(a)(9). A similar conclusion was reached in *Garza v. Chicago Health Clubs, Inc.*, 347 F.Supp. 955 (N.D.Ill. 1972).

■ The confession of judgment note also constitutes a security interest in the consumer's property which was not adequately disclosed on the form.[3] The disclosure form contains the following statement under the heading "Security Interest":

> "In accordance with the Federal Truth in Lending Act, until all payments have been made, the Contractor and any Subcontractor will be considered by virtue of the Mechanic's Lien Law to have a security interest in the Real Property to be Improved. The Contractor and any holder of the Note evidencing the indebtedness will be considered by virtue of any warrant of attorney to confess judgment contained in the said note to have a security interest in all real property owned by the Buyer, including but not limited to the Real Property to be Improved. Any holder, if a bank, shall have a security interest in all deposits and other personal property of the Buyer which come into the said bank's possession."

This statement contains little to alert the lay consumer to the fact that judgment may be entered and execution issue against his property without a hearing. We think that 12 C.F.R. § 226.8(b)(5), providing for "[a] description or identification of the type of any security interest held or to be retained or acquired by the creditor" requires at least this much.

If the confession of judgment clause itself had appeared on the same document as the other required disclosures, further explanation of its terms might not have been necessary. *See Garza v. Chicago Health Clubs, Inc., supra,* 347 F.Supp. at 359–60. But here, where the cognovit note is on a separate piece of paper with no identifying heading, signed several days later and not accompanied by an explanation of its significance, more than a vague reference in the disclosure statement to "any warrant of attorney to confess judgment" is required to warn the consumer of the possible consequences of default.

■ Another flaw in the above-quoted statement of security interests is its reference to the Mechanic's Lien Law. It appears that no security interest arising under the Mechanic's Lien Law was ever contemplated in connection with this transaction. If the loan from the bank had gone through as originally intended, Shapert would have been paid the full contract price upon completion of his work,[4] and would thus have had no basis for claiming a mechanic's lien.[5] The Court of Appeals for this circuit has recently held, in *Gennuso v. Commercial Bank and Trust Co.*, 566 F.2d 437 (3d Cir., 1977), that reference to a security interest that does not in fact exist constitutes the inclusion of "additional information" in such a manner "as to mislead or confuse the customer" in violation of § 226.6(c) of Regulation Z.

■ Finally, we conclude that § 226.6(c) was also violated by the misrepresentations concerning the availability of life and disability insurance in connection with this transaction, which was clearly calculated to mislead.

The four violations of the Truth in Lending Act discussed above render Shapert liable for the penalty of one thousand dollars

---

**3.** The definition of "Security Interest" at 12 C.F.R. § 226.2(z) includes "consensual or confessed liens". The interpretation of this definition, 12 C.F.R. § 226.202, makes it clear that a cognovit note is a security interest for the purposes of the act in those states, such as Pennsylvania, where judgment can be entered on such notes without notice or hearing.

**4.** See Advance Notice of Approval, Plaintiff's Exhibit 4.

**5.** A mechanic's lien can only arise in favor of an unpaid contractor, not in favor of a lending institution. 49 P.S. §§ 1301, 1303.

(that being less than twice the finance charge) provided in 15 U.S.C. § 1640(a).[6] As pointed out above, this penalty is offset by the benefit received by the Engles as a result of this transaction and no further payment is due.

### E. The Pennsylvania Home Improvement Finance Act

 Plaintiffs also seek a declaratory judgment that Defendant's acts in connection with this transaction violated several provisions of the Pennsylvania Home Improvement Finance Act, 73 P.S. § 500–101 et seq. This is a question entirely of state law which we decline to entertain. No rights in favor of a private litigant can arise from a violation of the Pennsylvania Act, the sole means of enforcement being through the state Attorney General or District Attorney. 73 P.S. §§ 500–501, 500–502. Since the Pennsylvania Act could not be the basis of any relief in addition to that available to Plaintiffs under federal law, discussed above, a lengthy analysis of the application of that Act to this transaction would serve no useful purpose.

### F. Punitive Damages and Attorneys Fees

Plaintiffs seek the award of both punitive damages and attorney's fees,[7] neither of which will be granted.

 Although Plaintiffs have certainly been the victims of some unjustifiable commercial behavior, we feel the most culpable party is the salesman, Patsy Arabia, who has never been made a party to this action and whose present whereabouts are unknown. It was Arabia who showed no scruples in the use of high pressure sales techniques to push the Engles into a contract which they could not afford and on which Shapert could make no profit. While Shapert also manipulated the Engles unconscionably in his efforts to salvage some profit from the contract, he has already

paid considerably for his misconduct in that he has received no return for the material and labor he has expended. We think it would be unjust to impose punitive damages on Shapert in addition to what he has already paid.

 The Engles were represented in this action by Central Susquehanna Valley Legal Services, and thus have incurred no attorney's fees. To award attorneys fees in this case would not serve to make Plaintiffs whole for the expenses incurred in enforcing the Act, but only to further penalize Shapert for the acts of his now departed agent.

## III. CONCLUSIONS OF LAW

1. By refusing to perform the work called for in the original contract of October 9, 1973, and by performing such work as was done in an unsatisfactory manner, Defendant Shapert Construction Company materially breached its contractual obligations, relieving Plaintiffs of their duty to pay the contract price. Defendant has nonetheless enriched Plaintiffs by the value of the materials installed, approximately one thousand dollars, for which it should be compensated.

2. Defendants Shapert Construction Company and Paul Shapert have violated Section 128(a)(9) of the Consumer Credit Protection Act, 15 U.S.C. § 1638(a)(9), and sections 226.8(b)(4), (5) and 226.6(c) of Regulation Z promulgated thereunder, 12 C.F.R. § 226.8(b)(4), (5) and 226.6(c) and are thereby liable to Plaintiffs for a penalty of one thousand dollars. This penalty is offset by the value of the materials installed on Plaintiffs' home, and is thus satisfied.

3. Entry of judgment against Plaintiffs in the Court of Common Pleas of Northumberland County without knowing and intelligent waiver of their rights to notice and

---

6. 15 U.S.C. § 1640(h) (Supp.1977) provides that only one recovery may be had for multiple violations in connection with a single credit transaction.

7. The award of attorneys fees in successful actions under the Truth in Lending Act is provided for in 15 U.S.C. § 1640(a)(2).

hearing deprived them of due process of law.