Robert J. BRADY, Plaintiff,

v.

C.F. SCHWARTZ MOTOR CO., INC. Defendant.

Civ. A. No. 88–101 LON.

United States District Court, D. Delaware.

Oct. 30, 1989.

Brian J. McLaughlin, of Barros, McNamara & Scanlon, Dover, Del., for plaintiff.

Roy S. Shiels, Esquire of Brown, Shiels & Chasanov, Dover, Del., for defendant.

**1046**

## MEMORANDUM OPINION
LONGOBARDI, Chief Judge.

### FACTS

On or about March 30, 1987, the Plaintiff Robert J. Brady ("Brady") entered into a consumer credit transaction with the Defendant C.F. Schwartz Motor Co., Inc. ("Schwartz") to purchase a 1984 Ford Mustang automobile. On or about the same date, Brady traded-in his 1978 Chrysler New Yorker and executed a note in the amount of $5,661.00 to finance the automobile purchase. After financing arrangements failed, that transaction was abandoned and Brady executed a second note in the amount of $2,550.54 as well as a Conditional Sales Contract on April 2, 1987. Although the contract lists the $2,550.54 as "Cash Down Payment" and the note bears the legend "Due ... On Demand ... April 22, 1987," the parties are in disagreement whether the $2,550.54 actually constituted a cash down payment or whether it was an amount to be financed by Schwartz.

When Schwartz failed to receive payment of the $2,550.54 on April 22, 1987, it instituted suit against Brady in the Justice of the Peace Court Number 16, Civil Action No. JP16–87–C–1780, in Dover, Delaware, to recover that amount. Although Brady apparently elected to represent himself in the state action, the record reflects that Brady admitted owing the $2,550.54 debt and was permitted to explain the circumstances surrounding the debt at trial. Docket Item ("D.I.") 9, Appendix, Exhibit B. Thereafter, the Justice of the Peace entered judgment against Brady in the amount of $2,500.00 plus court costs of $16.00 on July 30, 1987.[1] When Brady further elected not to appeal the judgment, the Justice of the Peace granted Schwartz's request for a Writ of Execution in the amount of $2,500.00 plus costs of $41.00 on September 15, 1987.

On February 16, 1988, Brady filed suit in this Court alleging that Schwartz violated the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* and Regulation Z promulgated thereunder, 12 C.F.R. § 226.1 *et seq.* to recover statutory damages in the amount of $1,000.00 plus reasonable attorney fees and costs for failing to properly disclose the amount financed, the finance charge, interest rate and payment due date of the amount financed. D.I. 1, ¶ 5. In addition, Brady asks this Court to exercise pendent jurisdiction over a claim for consumer fraud alleging that Schwartz acted fraudulently by initially making a deal with Brady in which he was not required to make a cash down payment (*i.e.*, the trade-in alone would be sufficient down payment) and then requiring the additional $2,550.54 note at issue. Schwartz has moved for summary judgment to dismiss Brady's complaint in the present action.

### SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue of material fact that can be resolved at trial and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Any doubts as to the existence of genuine issues of fact must be resolved against the moving party. *Ness v. Marshall,* 660 F.2d 517, 519 (3rd Cir.1981); *Tomalewski v. State Farm Life Insurance Company,* 494 F.2d 882, 884 (3rd Cir.1974). Furthermore, all inferences to be drawn from the underlying facts contained in the evidentiary sources must be viewed in light most favorable to the party opposing the motion. *Hollinger v. Wagner Min. Equipment Co.,* 667 F.2d 402, 405 (3rd Cir.1981) (citing *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3rd Cir.1976).

The standard for summary judgment mirrors the criteria for a directed verdict under Federal Rule of Civil Procedure 50(a). *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In this context, the appropriate judicial inquiry under Rule 56 is whether "the evidence is such that a reasonable jury could return a verdict for

---

1. Since the jurisdiction of the Justice of the Peace Court is limited to cases involving claims of $2,500.00 exclusive of costs and penalties, 10 Del.C. § 9301, Schwartz apparently waived the remaining portion of $55.54 due on the second note.

the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510; *see also Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3rd Cir. 1987). In order to determine whether a jury could reasonably find for only one party, the Court must look to "the substantive evidentiary standard of proof that would apply at the trial on the merits." *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512. The Court must then view the evidence presented in the record through the "schematic light" cast by "the prism of the substantive evidentiary burden" which would govern the jury's determination. *Bushman v. Halm*, 798 F.2d 651, 657 (3rd Cir.1986) (citing *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510).

At first blush there appears to be two questions raised by the Defendant Schwartz's motion for summary judgment. First, whether the $2,550.54 constitutes part of the down payment for the 1984 Ford Mustang or whether it was intended to be part of the overall financial package negotiated in the credit transaction. This question appears to have been answered in the earlier state court proceeding when the Justice of the Peace held the Plaintiff liable for the $2,500.00 amount of the second note. The second question raised by this motion appears to be whether the Defendant made an adequate disclosure of, *inter alia*, the actual amount financed, the finance charge, interest rate and payment due date of the amount financed. D.I. 1, ¶ 5.[2] The Defendant contends that this issue need not be addressed by this Court because the subject matter of the TILA claim constituted a compulsory counterclaim under Federal Rule of Civil Procedure 13(a) which should have been raised in the previous state debt collection action. Accordingly, the Defendant believes that this Court is precluded from hearing the TILA claim under the principle of *res judicata* since the earlier state proceeding was a final judgment on the merits. Since the present motion is one for summary judgment, Defendant has the burden of producing credible evidence that would entitle him to a directed verdict if not controverted at trial. *Adickes v. Kress & Co.*, 398 U.S.

144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

## DISCUSSION

It is well settled that the effect of *res judicata* is determined by reference to the law of Delaware. *See Matter of McMillan*, 579 F.2d 289, 293 (3rd Cir.1978) (Gibbons, J., concurring). Under Delaware law, *res judicata* permits "a final judgment upon the merits rendered by a court of competent jurisdiction [to] be raised as an absolute bar to the maintenance of a second suit in a different court upon the same matter by the same party or his privies." *Epstein v. Chatham Park, Inc.*, 52 Del. 56, 153 A.2d 180, 184 (1959); *Neoplan USA Corporation v. Taylor*, 604 F.Supp. 1540, 1544 (D.Del.1985). Under the modern view of this doctrine, *res judicata* "bars later litigation of any claim arising out of the same transaction that formed the basis for the prior adjudication." *Neoplan USA Corp.*, 604 F.Supp. at 1154; *see also Maldonado v. Flynn*, Del.Ch., 417 A.2d 378, 381 (1980), *rev'd sub nom. on other grounds*, Del.Supr., 430 A.2d 779 (1981). In Delaware, "a judgment by a court of competent jurisdiction is *res judicata* even if it is obtained upon default." *State v. National Automobile Insurance Company*, Del.Ch., 290 A.2d 675, 676 (1972); *see also Matter of McMillan*, 579 F.2d at 293 n. 6; 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4442 (1981). In addition, the principle of *res judicata* or claim preclusion operates to bar the assertion of a compulsory counterclaim which arose from the same subject matter of an earlier law suit where judgment was rendered on the merits. *Leoncavallo v. Evans*, 49 Del. 62, 109 A.2d 395 (1954).

TILA expressly provides for jurisdiction in state courts of "competent jurisdiction." 15 U.S.C. § 1640(e). The Delaware Code provides that the Justice of the Peace Courts are courts of competent jurisdiction although the jurisdictional amount is limited to $2,500.00. 10 Del.C. § 9301. The Delaware Code also provides for appellate review of decisions from the Justice of

---

2. At the argument on the motion, Plaintiff appeared to curtail the scope of his complaint to whether there was a proper disclosure of the interest rate charged by Schwartz.

the Peace Court. 10 Del.C. § 9505. Since the present TILA claim is limited to $1,000.00 by statute, the TILA claim could have been brought in the initial state action in the Justice of the Peace Court.[3] A failure to plead a compulsory counterclaim under Federal Rule of Civil Procedure 13(a) bars a party from bringing a later independent action on that claim under the principle of claim preclusion. *Great Lakes Rubber Corporation v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3rd Cir.1961); 6 Wright, Miller & Cooper, *Federal Practice and Procedure* § 1417. Unlike Rule 13(a), however, permissive counterclaims under Federal Rule of Civil Procedure 13(b) are not barred when omitted from an original action. *Mercoid Corp. v. Mid–Continent Co.*, 320 U.S. 661, 671, 64 S.Ct. 268, 273–74, 88 L.Ed. 376 (1944); 6 Wright, Miller & Cooper, *Federal Practice and Procedure* § 1420 at 112. The issue, therefore, is whether the Plaintiff's TILA claim now before this Court can be characterized as a compulsory counterclaim in that it should have been raised in the state court proceedings. If so, the present complaint would be precluded.

Rule 13(a) provides that a counterclaim is compulsory "if it arises out of the same transaction or occurrence that is the subject of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot require jurisdiction." Fed.R.Civ.P. 13(a). The Third Circuit Court of Appeals established in *Great Lakes*, 286 F.2d at 634, that the critical question in determining whether a claim is a compulsory counterclaim is whether it bears a "logical relationship" to an opposing party's claim. *Accord, Xerox Corp. v. SCM Corp.*, 576 F.2d 1057, 1059 (3rd Cir.1978). In *Great Lakes, supra,* the court stated that:

> [A] counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts.... Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred, if asserted separately, subsequently.

*Great Lakes*, 286 F.2d at 634; *see also Xerox Corp.*, 576 F.2d at 1059. Thus, "a detailed analysis must be made to determine whether the claims involve: (1) many of the same factual issues; (2) the same factual and legal issues; or (3) offshoots of the same basic controversy between the parties." *Xerox Corp.*, 576 F.2d at 1059; *see also Great Lakes*, 286 F.2d at 634.

TILA was enacted with the purpose of assuring "... a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and to avoid the uninformed use of credit." 15 U.S.C. § 1601. Because a creditor who is subject to the liability provisions of TILA for failing to properly disclose credit terms often has a cause of action against the debtor for an underlying contractual debt, 15 U.S.C. § 1640(a), the question has frequently arisen in the lower courts as to whether a counterclaim on the debt constitutes a compulsory or permissive counterclaim. Ordinarily, the resolution of this question is significant because if such a counterclaim is found to be compulsory, then the debt action will come within the court's ancillary jurisdiction, *Baker v. Gold Seal Liquors*,

---

**3.** Plaintiff asserts that the award of damages plus attorney's fees on a successful TILA claim under 15 U.S.C. § 1640(a)(3) would have exceeded the jurisdictional limit of $2,500.00 and, therefore, the Justice of the Peace Court would not have been a court of competent jurisdiction to hear his TILA claim in the original state action. *See* 15 U.S.C. § 1640(e). Plaintiff's argument is misplaced because damages for a TILA violation are limited to $1,000.00. 15 U.S.C. § 1640(a)(2)(A)(i). Moreover, the award of attorney's fees cannot be used to push the jurisdictional limit of the Justice of the Peace Court beyond $2,500.00. In *Marek v. Chesny,*

473 U.S. 1, 7–11, 105 S.Ct. 3012, 3050–18, 87 L.Ed.2d 1 (1985), the Supreme Court held that the term "costs" as used in Federal Rule of Civil Procedure 68 includes attorney's fees awardable under 42 U.S.C. § 1988. There is no reason to reject that reasoning in the present situation. In addition, it has been held that even an attorney-plaintiff cannot be awarded attorney's fees for his *pro se* representation of a TILA claim. *White v. Arlen Realty & Development Corp.*, 614 F.2d 387, 388–89 (4th Cir.1980). Thus, there is no support for Plaintiff's assertion that the Justice of the Peace Court lacked jurisdiction in the earlier debt proceeding.

417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974); *Ambromovage v. United Mine Workers of America*, 726 F.2d 972, 988 (3rd Cir.1984), whereas a permissive counterclaim must be dismissed unless there are independent grounds for jurisdiction. *Aldens, Inc. v. Packel*, 524 F.2d 38, 52 (3rd Cir.1975). This is not the instant case, however, because the underlying action for debt has already been adjudicated in the Delaware state court. Instead, the question is whether the federal TILA claim was a compulsory counterclaim in that state court action.

Although the Third Circuit has not previously analyzed the question of whether in a TILA action a counterclaim on the underlying debt is either compulsory or permissive, at least four other Circuits have decided the issue. There is a split of authority among these Circuit Courts with the Fourth, Sixth and Seventh Circuits each holding that the underlying debt counterclaim is permissive while the Fifth Circuit steadfastly retains its position as the sole appellate authority holding that it is compulsory. *See Whigham v. Beneficial Finance Co. of Fayetteville*, 599 F.2d 1322 (4th Cir.1979); *Valencia v. Anderson Bros. Ford*, 617 F.2d 1278, 1292 (7th Cir.1980), *rev'd on other grounds*, 452 U.S. 205, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981); *Maddox v. Kentucky Finance Co., Inc.*, 736 F.2d 380, 383–84 (6th Cir.1984); *Plant v. Blazer Financial Services, Inc. of Ga.*, 598 F.2d 1357, 1361 (5th Cir.1979).[4]

In *Whigham, supra*, the Fourth Circuit held that the federal TILA claim and the state debt counterclaim were not "logically related" even though they arose out of the same transaction because the debt "counterclaim raises issues of fact and law significantly different from those presented in the [TILA] claim." *Whigham*, 599 F.2d at 1324. The court based this decision upon

the reasoning that "the only question in the [TILA claim] is whether the lender made disclosures required by *federal* statute and its implementing regulations" whereas the debt counterclaim requires the "court to determine the contractual rights of the parties in accordance with *state* law." *Id.* (emphasis added). The lender's counterclaim is premised upon the simple allegation that the borrower defaulted on a private loan contract. On the other hand, the borrower's TILA claim does not hinge on his obligation to perform the underlying loan contract. Thus, the court concluded that the debt counterclaim was permissive and did not arise from the same obligation created by the contractual transactions even though it involves the same loan. *Id.*

The Fifth Circuit adopted the opposite approach in *Plant, supra*, where it held that the debt counterclaim in a TILA action is compulsory. *Plant*, 598 F.2d at 1363. Unlike the court in *Whigham*, the Fifth Circuit found that a "logical relationship" between the claims can be found in "a single aggregate of operative facts"—the loan transaction. *Id.* at 1361. Rejecting the argument that the success of TILA may be undermined if debtors were faced with counterclaims on debts often exceeding the statutory limit of $1,000.00, the court concluded that judicial economy is better served by trying the claims together because a determination that a debt is invalid under state law may result in the mootness of the TILA claim. *Id.* at 1361–64. The court also responded to the argument that state contract questions are better left for state courts by noting that federal courts are competent to decide state issues of law. *Id.* at 1364. Thus, the Fifth Circuit found that the debt counterclaim was logically related to the TILA claim since the "same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim

4. There is a similar split in authority among the District Courts within the Third Circuit which have addressed the issue. *See, e.g., Agostine v. Sidcon Corporation*, 69 F.R.D. 437 (E.D.Pa.1975) (In a TILA suit, creditor's counterclaims against the borrower for expenses connected with attempts to collect the debt under the original loan agreement were permissive); *accord, Zeltzer v. Carte Blanche Corp.*, 414 F.Supp. 1221 (W.D.Pa.1976); *Bloomer v. Household Consumer Discount Co.*, 21 Fed.R.Serv.2d 1256 (W.D.Pa. 1976); *Shriver v. Sears, Roebuck and Co.*, 22 Fed.R.Serv.2d 36 (W.D.Pa.1976); *but see Engle v. Shapert Const. Co.*, 443 F.Supp. 1383 (M.D.Pa. 1978) (creditor's counterclaim for the underlying debt in a suit by the borrowers based on an alleged TILA violation was a compulsory counterclaim).

rests activates additional legal rights, otherwise dormant, in the defendant." *Id.*

The Seventh Circuit in *Valencia, supra,* was the first appellate court to confront the conflicting circuit decisions in *Whigham* and *Plant.* In that case, the Seventh Circuit decided to follow the result in *Whigham* and ruled that the debt counterclaim was permissive in a TILA suit brought by the purchasers of a used automobile against the dealer and affirmed the District Court's dismissal of the counterclaim because there was no independent basis for jurisdiction in a non-diversity case. *Valencia,* 617 F.2d at 1292. The court stated that the purpose of Rule 13(a) to avoid multiple litigation by consolidating all controversies between the parties is not well-served when "the sole connection between a TILA claim and debt counterclaim is the initial execution of the loan document." *Id.* at 1291. In addition, the court doubted that the TILA claims could be expeditiously resolved if the District Court was saddled also with the burden of adjudicating cumbersome debt counterclaims. *Id.* For example, the court noted that TILA claims are ordinarily heard by the District Court because such claims usually only involve questions of law based upon examination of the loan documents. *Id.* A debt counterclaim, on the other hand, may obstruct the achievement of the goals of TILA if federal courts become entangled in the myriad issues of state contract law which are unrelated to the TILA claim. *Id.* at 1291–92.

Finally, after carefully reviewing these decisions, the Sixth Circuit in *Maddox, supra,* agreed with the Fourth and Seventh Circuits and held that a debt counterclaim is permissive in nature. *Maddox,* 736 F.2d at 383–84. In somewhat anticipating the issue involved in the present case, the court reasoned that "[a] ruling that the debt claim is a compulsory counterclaim could bar a TILA defendant who fails to bring a counterclaim on the debt from later bringing the debt action in state court." *Id.* at 383. Since "such a rule could systematically usurp these state law debt claims from adjudication by the state courts", the court refused to frustrate the purpose of TILA

by giving plaintiffs a disincentive to sue. *Id.*

The consensus of authority of appellate courts who have addressed the issue have concluded that the nexus between the debt counterclaim and the TILA claim is too tenuous if premised solely upon the execution of a debt instrument. Here, the dispute centers around the proper characterization of the $2,500.00 note, *i.e.,* whether it was a cash down payment or a part of the overall credit purchase of the car. The sole connection between the TILA claim and the debt claim is the execution of the sales contract. Resolution of the debt claim, however, does not bear a "logical relationship" to the resolution of Plaintiff's TILA claims because the validity or enforceability of the underlying sales contract does not affect Defendant's compliance or non-compliance with the TILA disclosure requirements. For example, the Plaintiff alleges in his complaint that Defendant violated the provisions of TILA by failing to disclose the amount financed, the amount of finance charges, the annual interest rate of the finance charge and the number, amount, due dates or periods of payments to repay the indebtedness. None of these issues is related to whether the underlying sales contract was valid or enforceable under state contract law. Thus, the Court finds that the question of Defendant's proper disclosure in this case under federal law is separate and distinct from the question of the validity or enforceability of the sales contract such that the two claims do not necessarily have to be consolidated in order to be resolved. *See Xerox Corp.,* 576 F.2d at 1059.

The Court concludes that the Defendant has failed to show an absence of a genuine issue of material fact on the question of whether the Plaintiff's TILA claim should have been brought in the initial state court action constitutes a compulsory counterclaim. The Court agrees with the analysis of the Fourth, Sixth and Seventh Circuit Courts such that Plaintiff's TILA claim in this case would be a permissive counterclaim if raised in the initial state proceeding and, therefore, is not barred under the principle of *res judicata.* Thus, for all of

the above reasons, Defendant's motion for summary judgment is denied.