**In re UNITED COMPANIES FINANCIAL CORPORATION, et al., Debtors.**

**Nos. 99–450(JCA) to 99–461(JCA).**

United States Bankruptcy Court, D. Delaware.

April 17, 2002.

Daniel F. Hedges, Charleston, WV, Neilson C. Himelman, Community Legal Aid Society, Inc., Wilmington, DE, for movants.

Marcia L. Goldstein, Brian S. Rosen, Weil Gotshal & Manges, LLP, New York City, Mark D. Collins, Deborah E. Spivack, Richards, Layton & Finger, P.A., Wilmington, DE, for debtors and Plan Administrator.

William H. Sudell, Derek Abbott, Morris, Nichols, Arsht & Tunnell, LLP, Wilmington, DE, Chaim J. Fortgang, Theodore Gewertz, Wachtell, Lipton, Rosen & Katz, New York City, for Official Committee of Unsecured Creditors.

## *OPINION*[1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is a motion for class certification of a proof of claim filed by

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant

William Jones, Blanch Jones, Eugene Oda and Linda Oda (collectively "the Claimants"). The Debtors objected to certification of the class proof of claim. Pursuant to Federal Rule of Civil Procedure 23(a) and (b) as made applicable by Bankruptcy Rules 7023 and 9014, and for the reasons set forth below, we grant the motion to certify the class to permit the filing of a class proof of claim.

## I. FACTUAL BACKGROUND

United Companies Financial Corporation and its affiliates (collectively "the Debtors") filed voluntary petitions under chapter 11 on March 1, 1999. All of the Debtors' assets were sold, and a liquidating plan of reorganization was confirmed on October 31, 2000.

On September 24, 1999, the Claimants filed a class proof of claim asserting a claim of $1,746,000 for illegal broker's fees and statutory damages. On June 29, 2000, the Debtors filed an objection to the class claim. On September 20, 2000, the Claimants responded to the Debtors' objection and moved for certification of a class defined as those 291 persons who were solicited by an unregistered mortgage broker, paid a mortgage broker fee, and signed a loan agreement with the Debtors in West Virginia after November 24, 1992. On April 5, 2001, the Debtors objected to the Claimants' motion to certify the class claim. The hearing on the Motion was held on April 6, 2001.

The Claimants base their class claim on an action filed in federal court in West Virginia on November 25, 1997, captioned

*William and Blanche Jones; Eugene and Linda Oda et al. v. United Companies Lending Corp.,* No. 2:97–1150 (S.D.W.Va.). In that action, the Claimants alleged that the Debtors had participated in illegal mortgage broker solicitation activities in violation of West Virginia law. Count I alleged that the Debtors violated state law by failing to provide required disclosure statements and paying brokers without obtaining a copy of the registration or disclosure statements. Count II alleged that the Debtors participated in the recruiting of loans through brokers without regard for the fiduciary duties of a broker to a prospective borrower. Count III alleged that the practices of the Debtors and the illegal brokers were unconscionable and resulted in unconscionable loans.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O).

## III. DISCUSSION

### A. Class Actions in Bankruptcy

█ The vast majority of courts conclude that class proofs of claim are permissible in a bankruptcy proceeding.[2] *See, e.g., Reid v. White Motor Corp.,* 886 F.2d 1462, 1469 (6th Cir.1989); *In re Charter Co.,* 876 F.2d 866, 873 (11th Cir.1989); *In re American Reserve Corp.,* 840 F.2d 487, 493 (7th Cir.1988); *In re Zenith Laboratories, Inc.,* 104 B.R. 659, 662 n. 2 (D.N.J. 1989); *In re Chateaugay Corp.,* 104 B.R.

to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

**2.** Under the former Bankruptcy Act the Third Circuit had held that a class proof of claim was not appropriate in a reorganization case.

*See SEC v. Aberdeen Sec. Co.,* 480 F.2d 1121, 1128 (3d Cir.1973). However, it has acknowledged that classes are now regularly certified under the Bankruptcy Code. *See, e.g., In re Whittaker,* 882 F.2d 791, 793 n. 1 (3d Cir.1989) (declining to review certification of class claim by lower court).

626, 629 (S.D.N.Y.1989); *In re First Interregional Equity Corp.*, 227 B.R. 358, 366 (Bankr.D.N.J.1998); *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 370 (Bankr.S.D.N.Y.1997); *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 22 (Bankr.E.D.Pa.1995). *But see Kahler v. FIRSTPLUS Fin., Inc. (In re FIRST-PLUS Fin., Inc.)*, 248 B.R. 60, 66 (Bankr. N.D.Tex.2000) (class proof of claim is not available). To disallow a class claim automatically "would effectively prohibit the use of class actions in bankruptcy altogether." *Zenith Labs.*, 104 B.R. at 663.

■ Whether to certify a class claim is within the discretion of the bankruptcy court. Rule 7023 of the Federal Rules of Bankruptcy Procedure expressly allows class certification in adversary actions, by incorporating Rule 23 of the Federal Rules of Civil Procedure. Fed.R.Bankr.P. 7023. Rule 9014 expands that Rule to contested matters, at the court's discretion. "The court may at any stage in a particular matter direct that one or more of the rules in Part VII shall apply." Fed.R.Bankr.P. 9014.

### B. *Standard for Certifying a Class Action Claim*

The Supreme Court has expressed its approval of class actions, noting that "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). The Third Circuit has held that class actions should be looked upon favorably. *See Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir.1985).

■ In order to certify a class action, the Claimants must establish that the four elements of Rule 23(a), as well as the requirements of Rule 23(b) are satisfied. *See, e.g., Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 183 (3d Cir.2001); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 624

(3d Cir.1996); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 248 (3d Cir.1975). The burden of proof is on the Claimants to establish each element. *First Interregional*, 227 B.R. at 366; *In re Grocerland Coop.*, 32 B.R. 427, 435 (Bankr.N.D.Ill. 1983). While the Claimants need not prove the merits of their claim at this stage, they must provide more than bare allegations or conclusory statements to satisfy the requirements of Rule 23. *Morrison v. Booth*, 763 F.2d 1366, 1371 (11th Cir.1985).

#### 1. *Rule 23(a)*

Rule 23(a) states:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Thus, Rule 23(a) requires a showing of: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *Johnston*, 265 F.3d at 183.

##### a. *Numerosity*

■ The requirement of numerosity does not require that joinder be impossible but instead dictates that joinder of all the parties is impracticable when the procedure would be "inefficient, costly, time-consuming, and probably confusing." *Ardrey v. Federal Kemper Ins. Co.*, 142 F.R.D. 105, 111 (E.D.Pa.1992). A court may make "common sense assumptions" in

order to support the finding of numerosity. *Snider v. Upjohn Co.*, 115 F.R.D. 536, 539 (E.D.Pa.1987) (*quoting Wolgin v. Magic Marker Corp.*, 82 F.R.D. 168, 171 (E.D.Pa. 1979)).

■ Here, the class is comprised of 291 members. While it would not be impossible to adjudicate each claim separately, class certification offers the benefit of adjudicating common issues once. It thus avoids the cost and time inherent in 291 separate hearings on the same issues or the procedural burden of requiring joinder of these separate claims and objections. The numerosity requirement has been met in this case.

### b. *Commonality*

■ Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). This "threshold of commonality is not high." *In re School Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir.1986). All class members need not share identical claims; "factual differences among the claims of the putative class members do not defeat certification." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir.1994). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Id.* at 56; *Krell v. Prudential Ins. Co. of Am.* (*In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions*), 148 F.3d 283, 310 (3d Cir. 1998).

■ In this case the claimants assert that all members of the class were damaged by the illegal practices of the brokers. At least one common issue is extant (whether the printed forms that the brokers used complied with applicable legal requirements). This satisfies the threshold issue of whether the claims share common questions of law or fact.

### c. *Typicality*

■ The typicality requirement of Rule 23(a)(3) and the adequacy of representation requirement in Rule 23(a)(4) are designed to assure that the interests of the unnamed class members will be adequately protected by the named class members. *See, e.g., General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977).

■ Rule 23(a)(3) requires that "the claims or defenses of the class representative parties be typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality entails an inquiry into whether "the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Weiss v. York Hosp.*, 745 F.2d 786, 810 (3d Cir.1984); *Eisenberg*, 766 F.2d at 786. "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Prudential*, 148 F.3d at 311; *see also Baby Neal*, 43 F.3d at 57. Much like commonality, the typicality requirement does not mandate that all class members share identical claims. *See Baby Neal*, 43 F.3d at 56.

■ The Claimants allege that the claims and defenses that they advocate for themselves are similar to the claims of the class members and that they are typical victims of the Debtors' improper practices. The Claimants' claims arise from the same course of conduct and are based on the same legal theories as those of the class members they seek to represent.

The Debtors assert that there are too many individualized factual inquiries rendering class treatment inappropriate. For example, the Debtors assert that 42 brokers and 8 closing attorneys assisted the class members in obtaining financing. In order to prove that the brokers failed to provide legal disclosures, all of the class members, brokers and closing attorneys will have to be examined with respect to the discussions between the parties.

However, the Claimants assert, and we agree, that the basic factual pattern that gives rise to liability is identical—it is alleged that none of the brokers were registered with the Secretary of State and none used a broker agreement containing the disclosures required. The central issue in this suit is whether the forms supplied by the brokers complied with West Virginia law, not the factual differences among the class members and brokers. *See, e.g., Baby Neal,* 43 F.3d at 56 ("factual differences among the claims of the putative class members do not defeat certification"). Consequently, we conclude that the typicality requirement is met here.

### d. *Adequacy of Representation*

■ Rule 23(a)(4) requires that "the representative party will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). A class has adequate representation if (1) counsel for the named plaintiffs is qualified, experienced, and generally able to conduct the suit, and (2) the class representative's interests are not antagonistic to those of the unnamed members of the class. *See, e.g., Prudential,* 148 F.3d at 312; *Lewis v. Curtis,* 671 F.2d 779, 788 (3d Cir.1982); *First Interregional,* 227 B.R. at 368–69.

■ Counsel for the Claimants has been shown to be anything but inadequate. Counsel is experienced in litigating these sorts of consumer actions and as such will promote the interests of the class repre-

sentatives. Additionally, the Claimants have no conflict of interest that would negate their representation of the entire class. The Claimants and class members have similar claims against the Debtors. Therefore, we conclude that the Claimants will adequately represent the class.

### 2. *Rule 23(b)*

Once an action satisfies the prerequisites of Rule 23(a), the Claimant must establish it meets one of the three elements of Rule 23(b). In this case, the Claimants seek certification of the class claim under Rule 23(b)(3), which states:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> \*    \*    \*    \*    \*    \*
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

### a. *Questions of Law and Fact Predominate*

■ The purpose of requiring common questions of law or fact to predomi-

nate is to ensure that the class is sufficiently cohesive to warrant adjudication by representation. *See Amchem*, 521 U.S. at 623, 117 S.Ct. 2231; *In re LifeUSA Holding Inc.*, 242 F.3d 136, 144 (3d Cir.2001). The predominance analysis under Rule 23(b)(3) is much more demanding than the general commonality test under Rule 23(a)(2). *See Amchem*, 521 U.S. at 624, 117 S.Ct. 2231; *LifeUSA Holding*, 242 F.3d at 144; *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997).

In this case, the Claimants allege that common issues dealing with the legality of the standardized documents used by the brokers meet the predominance standard since the form in question is the focal point of the class action and the basis for all the claims.

The Debtors assert that individual issues predominate since they have compulsory counterclaims against 52 members of the class who are currently in default under the terms of their mortgages with the Debtors. Unless they assert their compulsory counterclaims, the Debtors allege they will lose their claims against those class members. In order to maintain their respective compulsory counterclaims, Debtors assert that they will be required to present individualized evidence with respect to every defaulting class member. Such individualized treatment, the Debtors assert, renders the class claim unmanageable.

We disagree with the Debtors's argument because it appears that the Debtors counterclaims are permissive, rather than compulsory counterclaims. *See, e.g., Brady v. C.F. Schwartz Motor Co., Inc.*, 723 F.Supp. 1045, 1050 (D.Del.1989).

In *Brady*, the Court held that a Truth in Lending Act ("TILA") suit filed in the District Court was not a compulsory counterclaim to the suit filed by the lender in state court. In so deciding, the court reasoned that the "resolution of the debt claim ... does not bear a 'logical relationship' to the resolution of Plaintiff's TILA claims because the validity or enforceability of the underlying sales contract does not affect Defendant's compliance or noncompliance with the TILA disclosure requirements." *Id.* Thus, we conclude that the existence of permissive counterclaims of the Debtors to some of the class members' claims does not render the class unmanageable.

The Debtors further assert that in order to prove that the illegal broker payments were unconscionable and resulted in unconscionable loans in violation of the West Virginia statute, an inquiry into the circumstances surrounding the execution of the contract is necessary. Such an inquiry requires proof on behalf of each class member of the circumstances surrounding the contract's execution. *See, e.g., Orlando v. Finance One of West Virginia, Inc.*, 179 W.Va. 447, 369 S.E.2d 882, 885 (1988); *Troy Mining Corp. v. Itmann Coal Co.*, 176 W.Va. 599, 346 S.E.2d 749, 753 (1986). This, the Debtors argue, bars certification of the Class Claim.

We disagree. Although there are specific inquiries with respect to each class member necessary for a finding of an unconscionable contract, there is alleged a common course of conduct by the Debtors as to all class members, namely that the Debtors participated in the solicitation of loans through unlicensed brokers without regard for the fiduciary duties of a broker to a prospective borrower. This is alleged to have been a uniform practice affecting all members of a class which could be determined to be unconscionable under

West Virginia law.[3] *See, e.g., Davis v. Cash For Payday, Inc.,* 193 F.R.D. 518, 522 (N.D.Ill.2000) (class treatment proper where unconscionability claim rests on factual and legal questions common to all class members); *Mallory v. Mortgage America, Inc.,* 67 F.Supp.2d 601, 614 (S.D.W.Va.1999) (despite possibility that individualized inquiries concerning each class member may be required to prove unconscionability, class action was still the superior method for adjudicating the claim); *Fogie v. Rent–A–Center, Inc.,* 867 F.Supp. 1398, 1403 (D.Minn.1993) (class certified where uniform practices affecting all members of a class could be determined to be unconscionable notwithstanding representations made to individual plaintiffs).

Furthermore, to the extent that resolution of any individual issue is necessary for a finding of unconscionability under West Virginia law, we can conduct a separate inquiry. *See, e.g., Eisenberg,* 766 F.2d at 786 (more efficient to order separate trials to determine individual issue of reliance than to eliminate securities class action); *In re ML–Lee Acquisition Fund II, L.P.,* 848 F.Supp. 527, 563 (D.Del.1994) (to the extent that individual issues are presented, the court can deal with those through separate hearings).

We conclude that any individual factual or legal issues that may arise will be secondary to the common questions concerning the Debtors' alleged course of conduct and its unlawfulness. Given the apparent standardized nature of the Debtors' lending practices, we conclude that common questions predominate.

b. *Class Action as Superior Method to Resolve Controversy*

The second part of Rule 23(b) requires a finding that the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b). Within this requirement a court should consider "the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3)(D); *Johnston,* 265 F.3d at 194.

Here, the Claimants allege that there is no better method to adjudicate the claims aside from a class action. We agree. First, it is probable that most members of the proposed class are unaware of their rights under West Virginia law; thus, it is unlikely that individuals will file separate claims to protect their rights. Second, the amount of damages to be recovered by each class member is relatively small, especially in light of the likely recovery for creditors under the confirmed bankruptcy plan, thereby rendering prosecution of an individual claim cost-prohibitive.

Lastly, we view the filing of a class claim as similar procedurally to the Debtors' use of omnibus objections which is a common practice in this Court. In omnibus objections to claims, debtors file one objection to claims on a common ground, such as the claims are duplicates, late or subject to subordination under section 510(b). The Court typically hears the omnibus objection and the claimants' responses at one hearing. This is often an expeditious means of dealing with common objections. If individual issues are raised, they are dealt with at that hearing or rescheduled for separate hearings. Thus, we conclude that use of a class proof of claim in the circumstances of this case is a superior method to resolve these claims.

IV. *CONCLUSION*

We conclude that the Claimants have satisfied the requirements of Rule 23(a)

---

**3.** This is not the case where we need to apply different state laws to different class members. The entire class is suing for a determination that the loans are unconscionable under West Virginia law.

and (b)(3) and we will certify the class to permit the filing of a class proof of claim.

An appropriate Order is attached.

## *ORDER*

AND NOW, this **17TH** day of **APRIL, 2002,** upon consideration of the motion for class certification of a proof of claim filed by William Jones, Blanch Jones, Eugene Oda and Linda Oda and the Debtors' objection to certification of the class proof of claim, and after a hearing, for the reasons set forth in the accompanying Opinion, it is hereby

**ORDERED** that the claim of William Jones, Blanch Jones, Eugene Oda and Linda Oda, is hereby **CERTIFIED** as a class action proof of claim.