# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HOMELAND INSURANCE COMPANY OF NEW YORK, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. N11C-01-089 ALR |
| CORVEL CORPORATION, | ) ) | |
| Defendant. | ) ) | |
| CORVEL CORPORATION, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CA. No. N15C-05-069 ALR |
| HOMELAND INSURANCE COMPANY OF NEW YORK, | ) ) ) | |
| Defendant. | ) | |

Submitted: November 17, 2017
Decided: January 5, 2018

## <u>MEMORANDUM OPINION</u>

*Upon CorVel Corporation's Motion for Summary Judgment*
**GRANTED IN PART**

*Upon Homeland Insurance Company of New York's Motion for Summary Judgment*
**DENIED IN PART**

**ROCANELLI, J.**

Before the Court are cross-motions for summary judgment filed by CorVel Corporation ("CorVel") and Homeland Insurance Company of New York ("Homeland"). CorVel contends that Homeland committed bad faith under a Louisiana statute ("Louisiana Bad Faith Statute") by knowingly "misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue."[1] Homeland challenges both the applicability of the Louisiana Bad Faith Statute and the merits of CorVel's bad faith claim. This is the Court's decision on CorVel and Homeland's cross-motions for summary judgment.

## Factual and Procedural Background

### I. The Parties

CorVel is a Delaware corporation that owns and operates a Preferred Provider Organization ("PPO") network throughout the United States.[2] CorVel entered into a number of PPO agreements with providers in Louisiana, which has a statute providing certain notice requirements that a PPO must meet when it applies a discount ("Louisiana PPO Statute").[3] If a PPO fails to comply with the Louisiana PPO Statute's notice requirements, it can be subjected to financial consequences.[4]

---

[1] La. R.S. § 22:1973(B)(1).
[2] *See CorVel Corporation v. Homeland Insurance Company of New York*, 112 A.3d 863, 864 (Del. 2015) (providing a general description of the facts in the underlying coverage litigation).
[3] La. R.S. § 40:2203.1.
[4] La. R.S. § 40:2203.1(G).

Homeland is an insurance company incorporated in New York. Homeland issued a Managed Care Organizations Errors and Omissions Liability Policy to CorVel for a policy period of October 31, 2005 to October 31, 2006 ("Homeland Policy"). The Homeland Policy was subsequently renewed for two continuous policy periods of October 31, 2006 to October 31, 2007 and October 31, 2007 to December 1, 2007. The Homeland Policy was a "claims-made" policy, which provided:

> The Underwriter will pay on behalf of the Insured any Loss which the Insured is legally obligated to pay as a result of any Claim that is first made against the Insured during the Policy Period and reported to the Underwriter either during the Policy Period or in any event within ninety (90) days after the end of the Policy Period…[5]

## II. The Louisiana Arbitration Action

In December 2006, a Louisiana hospital initiated a class action arbitration ("Louisiana Arbitration Action") against CorVel, alleging that CorVel violated the notice requirements of the Louisiana PPO Statute. On March 28, 2007, CorVel's director of legal services, Sharon O'Connor, called Homeland's claims administrator, Virginia Troy, to notify Homeland of the claim asserted against CorVel in the Louisiana Arbitration Action. On the same day, O'Connor sent Troy documents relating to the Louisiana Arbitration Action, including: (1) a December 4, 2006 letter from counsel for the class notifying CorVel of the class's intention to

---

[5] Joint Appendix ("J.A.") at 21.

initiate the Louisiana Arbitration Action; (2) an engagement letter confirming CorVel's engagement of counsel in connection with pending litigation and "related arbitration proceeding;" and (3) a letter from CorVel's counsel to the Case Manager for the American Arbitration Association regarding the pending Louisiana Arbitration Action.[6]

In December 2010, CorVel sought permission from Homeland to settle the Louisiana Arbitration Action for the policy limits of the Homeland Policy.[7] However, Homeland did not consent to a settlement. Furthermore, Homeland never provided a coverage determination to CorVel.

### III.   Homeland's Delaware Declaratory Judgment Action

Homeland filed a declaratory judgment action in this Court on January 10, 2011 ("Delaware Declaratory Judgment Action") seeking a declaration that there was no coverage for the Louisiana Arbitration Action under the Homeland Policy. Homeland contended that there was no coverage for four reasons: (1) coverage was barred by a prior proceedings exclusion in the Homeland Policy; (2) the claim was first made before the policy period; (3) CorVel failed to report the Louisiana Arbitration Action in compliance with the reporting requirements of the Homeland

---

[6] *See* J.A. at 47-53.
[7] *See* J.A. at 106 (stating that CorVel asked Homeland to commit to a settlement of up to the limits of the Homeland Policy at a December 22, 2010 teleconference).

Policy; and (4) the Louisiana Arbitration Action sought recovery of penalty damages that would not qualify as an insured loss under the Homeland Policy.[8]

## IV. CorVel's Settlement

On March 24, 2011, CorVel and Homeland[9] were named as defendants in a class action already filed in Louisiana state court alleging the same violations of the Louisiana PPO Statute ("Louisiana Class Action").[10] Shortly thereafter, CorVel notified Homeland that it agreed to settle the Louisiana Arbitration Action and the Louisiana Class Action.[11] On June 23, 2011, CorVel entered into a settlement agreement with the Louisiana Class for $9 million and an assignment of CorVel's insurance claim against Homeland.[12] Thereafter, the Louisiana Class continued to litigate against Homeland[13] in Louisiana ("Louisiana Coverage Action"), and the Delaware Declaratory Judgment Action and the Louisiana Coverage Action continued on parallel tracks.

---

[8] *See* J.A. at 474-86.

[9] Homeland was named as a defendant pursuant to a Louisiana statute allowing an injured party to bring suit directly against an insurer. La. R.S. § 22:1269. Another CorVel insurer, Executive Risk Specialty Insurance Company ("Executive Risk"), was also named as a defendant.

[10] The case was captioned *Williams v. SIF Consultants of Louisiana, Inc., et al.*, No. 09-C-05244-C (Dist. Ct., St. Landry Parish, La.).

[11] *See* J.A. at 744.

[12] *See* J.A. at 111-83.

[13] The Louisiana Class also continued to litigate against Executive Risk. However, Executive Risk eventually settled with the Louisiana Class for $1,750,000. *See* J.A. 631-33.

## V. Conflict Between Delaware and Louisiana on Penalty Issue

On June 13, 2013, the Delaware Superior Court granted partial summary judgment to Homeland in the Delaware Declaratory Judgment Action, concluding that the damages available under the Louisiana PPO Statute were an uninsurable penalty rather than a covered loss.[14]  However, seven weeks later, the Louisiana trial court reached the opposite conclusion in the Louisiana Coverage Action.  The Louisiana trial court granted partial summary judgment to the Louisiana Class, holding that the damages available under the Louisiana PPO Statute were covered damages, not uninsurable penalties.[15]  As a result, on April 2, 2015, the Delaware Supreme Court reversed the Delaware Superior Court's order and deferred to Louisiana's interpretation of its own statute as a matter of comity.[16]

## VI. CorVel's Bad Faith Action

On May 8, 2015, CorVel commenced its own action in this Court, alleging breach of contract for Homeland's refusal to provide indemnification and defense pursuant to the terms of the Homeland Policy.  CorVel subsequently amended its complaint to add a claim for violation of Homeland's duty of good faith and fair

---

[14] *Homeland Insurance Co. v. CorVel Corporation*, 2013 WL 3937022 (Del. Super. June 13, 2013).  The judge who issued the June 13, 2013 opinion retired shortly thereafter and the case was reassigned to this judicial officer.
[15] *Williams v. SIF Consultants of Louisiana, Inc.*, 2013 WL 7330225 (La. Dist. Ct. July 29, 2013).
[16] *CorVel Corporation v. Homeland*, 112 A.3d at 868.

dealing. The Court consolidated the Delaware Declaratory Judgment Action and CorVel's action on July 7, 2015 ("Delaware Consolidated Action").

## VII. Louisiana Finds Coverage

On January 21, 2016, the Louisiana trial court granted summary judgment to the Louisiana Class in the Louisiana Coverage Action, finding that there was coverage under the Homeland Policy for the claims made under the Louisiana PPO Statute.[17] The Louisiana trial court first found that the Louisiana Arbitration Action was made and reported during the policy period of the Homeland policy.[18] The court then considered Homeland's argument that there was no coverage because the claims in the Louisiana Arbitration Action were related to prior claims made before the policy period of the Homeland Policy.[19] The Louisiana trial court rejected Homeland's argument because, even though the claims were factually similar, the previously filed claims could not possibly have been covered claims under

---

[17] *Williams v. SIF Consultants of Louisiana*, No. 09-C-5244-C, at 6 (27th Jud. Dist. Ct. La., Jan. 21, 2016).

[18] *Id.* at 4-5 ("In December of 2006, [Louisiana Class] sent to Corvel a class arbitration demand for claims made against the same for its violation of [the Louisiana PPO Statute]. From that day forward, Homeland continued to receive notice of the filing of the class arbitration by [Louisiana Class] against Corvel.").

[19] *Id.* at 3 (referring to a worker's compensation demand by the Office of Risk Management in 2005 that was factually similar to the claims made in the Louisiana Arbitration Action).

Homeland's policy.[20] As a result, the Louisiana trial court entered judgment in favor of the plaintiff class on February 5, 2016 for $10 million plus interest.[21]

Homeland appealed to the Louisiana Court of Appeal for the Third Circuit, and this Court stayed the Delaware Consolidated Action pending the outcome of the appeal in Louisiana.[22] On December 29, 2016, the Louisiana Court of Appeal affirmed the Louisiana trial court's decision finding coverage.[23] Homeland filed an Application for a Writ of Certiorari with the Louisiana Supreme Court, which was denied on April 13, 2017.[24] On April 21, 2017, Homeland paid the class $12,439,383.56 to satisfy the judgment and the interest owed.[25]

## VIII. Status of Delaware Consolidated Action

On July 6, 2017, this Court held an office conference to clarify the status of the Delaware Consolidated Action in light of the coverage ruling from Louisiana. The parties agreed that the Louisiana coverage ruling rendered Homeland's coverage claims moot in the Delaware Consolidated Action. The Court subsequently issued

---

[20] *Id.* at 5 (finding that the worker's compensation claims would have been specifically excluded under Homeland's policy).
[21] *Williams v. SIF Consultants of Louisiana*, No. 09-C-5244-C (27th Jud. Dist. Ct. La., Feb. 5, 2016).
[22] *Homeland Ins. Co. of New York v. CorVel Corporation*, 2016 WL 1423047, at *3 (Del. Super. Apr. 6, 2016).
[23] *Williams v. SIF Consultants of Louisiana, Inc.*, 209 So.3d 903, 912 (La. Ct. App. 3 Cir. 2016).
[24] *Williams v. SIF Consultants of Louisiana*, 218 So.3d 629, 630 (La. 2017).
[25] *See* J.A. at 346-47.

an Order lifting the stay and providing that "the claim of bad faith is the only remaining claim to be resolved in this action."[26]

Pursuant to the Court's Order, the parties engaged in extensive briefing on the bad faith claim. CorVel moves for summary judgment, contending that Homeland committed bad faith under the Louisiana Bad Faith Statute. Homeland also moves for summary judgment, contending that the Louisiana Bad Faith Statute does not apply, and challenging the merits of CorVel's bad faith claim. This is the Court's decision on CorVel and Homeland's cross-motions for summary judgment in the Delaware Consolidated Action.

## Standard of Review

The Court may grant summary judgment only where the moving party can "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[27] The moving party bears the initial burden of proof and, once that is met, the burden shifts to the non-moving party to show that a material issue of fact exists.[28] At the motion for summary judgment phase, the Court must view the facts "in the light most favorable to the non-moving party."[29] Where the parties have filed cross-motions for summary judgment and

---

[26] *Homeland Ins. Co. of New York v. CorVel Corporation*, C.A. No. N11C-01-089, at 1 (Del. Super. July 6, 2017).
[27] Super. Ct. Civ. R. 56(c).
[28] *Moore v. Sizemore*, 405 A.2d 679, 680-81 (Del. 1979).
[29] *Brozka v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).

8

both argue that there are no existing issues of material fact, the Court shall treat the motions as a stipulation for decision on the merits based on the record submitted with the motions.[30]

## Choice of Law Analysis

CorVel brought its bad faith claim solely under the Louisiana Bad Faith Statute.[31]  Therefore, before evaluating the merits of CorVel's bad faith claim, the Court must first determine if Louisiana law applies.

### I.  The Parties' Positions on Choice of Law

Before conducting the choice of law analysis, the Court notes that both Homeland and CorVel argue that choice of law has already been decided in this case, but reach opposite conclusions.  Therefore, the Court will first address the parties' positions on choice of law.

#### A.  *Homeland's Position that Delaware Law Controls*

Homeland argues that Delaware law controls the bad faith claim for two reasons.  First, Homeland argues that Delaware law controls because, during the appeal of the penalty issue before the Delaware Supreme Court, CorVel conceded that Delaware law applied to the construction of the insurance policy.[32]  The Court rejects this argument.  The Supreme Court's opinion dealt solely with the limited

---

[30] Super. Ct. Civ. R. 56(h).
[31] La. R.S. § 22:1973.
[32] *See CorVel Corporation v. Homeland*, 112 A.3d at 870.

9

question of whether the damages available under the Louisiana PPO Statute were an uninsurable penalty or a covered loss.[33] To that end, the Supreme Court noted that "the parties may have agreed *for purposes of this appeal* that Delaware law applies to the construction of the policy."[34] Any concession CorVel made regarding choice of law was limited to the context and subject matter of the Supreme Court's narrow review, and does not control choice of law for the bad faith claim.

Second, Homeland argues that Delaware law controls based on the Delaware Supreme Court's decision in *Certain Underwriters at Lloyds, London v. Chemtura Corporation*.[35] *Chemtura* dealt with which state's law should apply to the interpretation of an insurance policy that covered risks nationwide.[36] The Superior Court used the *Second Restatement's* "most significant relationship" framework for its choice of law analysis and concluded that the "site-of-the-risk" should determine which state's law applies.[37] In other words, where an insurance policy insures against risks nationwide, the Superior Court held that the "underlying contract law of the states where the [] claims arose would govern on a claim-by-claim basis."[38] The Delaware Supreme Court reversed, holding that the courts should use the "most

---

[33] *Id.* at 864.
[34] *Id.* at 870 (emphasis added).
[35] 160 A.3d 457 (Del. 2017).
[36] *Id.* at 459.
[37] *Id.*
[38] *Id.*

10

significant relationship" framework to find one consistent body of law that will apply no matter where the claim arises so that the policies will not be "read in fundamentally different ways in different cases, based on the happenstance of where … potential liability results in litigation."[39]

Homeland relies on *Chemtura* to argue that Louisiana law should not apply to the interpretation of the insurance contract simply because the underlying claim arose in Louisiana. Rather, according to Homeland, the Court should apply a consistent body of law, Delaware law, no matter where the claim arises.[40] However, Homeland's reliance on *Chemtura* is misplaced. In *Chemtura*, the insured sought coverage for similar claims arising in multiple states.[41] In the underlying litigation of this case, CorVel sought coverage for one claim brought solely in Louisiana for violation of a Louisiana statute that does not apply outside of Louisiana. In addition,

---

[39] *Id.* at 460.

[40] Homeland's argument suggests that, under *Chemtura*, Delaware law has the "most significant relationship" to the Homeland Policy. However, aside from referencing CorVel's purported stipulation that Delaware law controls the interpretation of the Homeland Policy before the Delaware Supreme Court, Homeland does not explain why Delaware has the "most significant relationship" to this bad faith claim. As the Supreme Court noted, the only connection these parties have with Delaware is that CorVel is incorporated here. *See Corvel Corporation v. Homeland*, 112 A.3d at 869. However, the insured's situs of incorporation does not dictate choice of law. For example, in *Chemtura*, the Delaware Supreme Court found that the state with the "most significant relationship" to the insurance policy was actually the insured's principal place of business. *Chemtura*, 160 A.3d at 460.

[41] *Id.* at 463 (providing that the litigation involved claims arising in Arkansas and Ohio).

11

while *Chemtura* was a coverage dispute, this is a bad faith claim after coverage has already been determined. Therefore, *Chemtura* does not require that this Court must apply Delaware law to the bad faith claim.

## B. *CorVel's Position that Louisiana Law is the Law of the Case*

CorVel relies on *Premier Parks, Inc. v. TIG Insurance Company*[42] to argue that Louisiana law is the law of the case, and should therefore be applied to the bad faith claim. In *Premier Parks*, the parties cross-moved for summary judgment in a declaratory judgment action on a coverage issue.[43] During an earlier phase of the litigation, the Superior Court had determined that Oklahoma law applied to the interpretation of the insurance contract.[44] Therefore, the Court recognized that its prior holding was "the law of the case" and continued to apply Oklahoma law to the insurance policy.[45]

Relying on *Premier Parks*, CorVel argues that the Delaware Supreme Court, this Court, and the Louisiana courts have already applied Louisiana substantive law to the coverage claims, so Louisiana law is the law of the case. However, unlike in *Premier Parks*, no court has yet made a choice of law determination for either the

---

[42] 2006 WL 2709235 (Del. Super. Sep. 21, 2006).
[43] *Id.* at *1.
[44] *Id.* at *9.
[45] *Id.*

12

coverage dispute or the bad faith claim.[46]  In addition, choice of law determinations

on the coverage issues would not necessarily control which state's law applies to the

bad faith claim.  Therefore, it remains necessary for this Court to conduct a choice

of law analysis to determine which state's law applies to the bad faith claim.

## II.     Delaware's Choice of Law Rules

Because Delaware is the forum, the Court will apply Delaware's choice of

law standards to determine which state's law applies to the bad faith claim.[47]  In both

contract and tort disputes, Delaware courts determine which state's law has the

"most significant relationship" to the dispute pursuant to the *Second Restatement's*

choice of law framework.[48]   However, the Court considers different factors

depending on whether the dispute sounds in contract or tort.[49]  Delaware courts

---

[46] *See CorVel Corporation v. Homeland*, 112 A.3d at 868-70 (stating that Louisiana and Delaware law are not different regarding contract interpretation and applying Louisiana's interpretation of a Louisiana statute solely as a matter of comity).

[47] *See AT&T Wireless Services, Inc. v. Federal Ins. Co.*, 2007 WL 1849056, at *2 (Del. Super. June 25, 2007).

[48] *See Chemtura*, 160 A.3d at 464-65 (explaining the "most significant relationship" approach to contract disputes); *Travelers Indemnity Company v. Lake*, 594 A.2d 38, 48 (Del. 1991) (adopting the "most significant relationship" approach in tort disputes).

[49] *See* Restatement (Second) of Conflict of Laws § 188 (1971) ("Second Restatement") (providing the choice of law framework for contract disputes); Second Restatement § 145 (providing the choice of law framework for tort disputes).

typically ground a bad faith cause of action in contract.[50]  Therefore, the Court will

apply the *Second Restatement's* choice of law framework for contract disputes.

There are three components to the *Second Restatement's* "most significant

relationship" analysis for choice of law in contract disputes: "(i) determining if the

parties made an effective choice of law through their contract; (ii) if not, determining

if there is an actual conflict between the laws of the different states each party urges

should apply; and (iii) if so, analyzing which state has the most significant

relationship."[51]

When determining the "most significant relationship" in a contract dispute,

the Second Restatement lists five factors for the Court to consider ("Contract

Factors").[52]  The Contract Factors are:

(a) the place of contracting,
(b) the place of negotiation of the contract,
(c) the place of performance,
(d) the location of the subject matter of the contract, and
(e) the domicil, residence, nationality, place of incorporation and place
of business of the parties.[53]

The Contract Factors are meant "to be evaluated according to their relative

importance with respect to the particular issue."[54]

---

[50] *See Enrique v. State Farm Mutual Automobile Insurance Co.*, 142 A.3d 506, 512 (Del. 2016).
[51] *Chemtura*, 160 A.3d at 464.
[52] Second Restatement § 188.
[53] Second Restatement § 188(2)(a)-(e).
[54] Second Restatement § 188(2).

In addition, the Court should conduct its analysis "in light of the *Second Restatement's* general considerations found in § 6 that 'underlie all rules of choice of law and are used in evaluating the significance of a relationship, with respect to the particular issue, to potentially interested states, the transaction and the parties.'"[55] The general considerations of choice of law listed in the *Second Restatement* are:

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.[56]

## III. Choice of Law Determination in this Case

The Court will apply the three steps to determining choice of law in a contract dispute to determine which state's law applies to the bad faith claim.[57] First, Homeland and CorVel did not make a choice of law determination in the insurance contract. Therefore, the contract provisions do not dictate choice of law for the bad faith claim.

Second, the Court must determine if there is an actual conflict between the laws of Delaware and Louisiana, which Homeland and CorVel respectively argue

---

[55] *Chemtura*, 160 A.3d at 465 (citing Second Restatement § 6 cmt. b).
[56] Second Restatement § 6.
[57] *See Chemtura*, 160 A.3d at 464.

15

apply to the bad faith claim. In Delaware, the standard for bad faith is generally dictated by case law.[58] The Delaware Supreme Court has held that an insured has a cause of action for bad faith when "an insurer refuses to honor its obligations and clearly lacks reasonable justification for doing so."[59] By contrast, Louisiana bad faith claims are controlled by the Louisiana Bad Faith Statute.[60] The Louisiana Bad Faith Statute expressly defines conduct constituting bad faith, and such conduct does not typically require a "reasonable justification" element.[61] In addition, the Louisiana Bad Faith Statute provides for a mandatory award of damages and a discretionary penalty for bad faith conduct.[62] Therefore, the Court finds that there is an actual conflict between the bad faith law in Delaware and Louisiana. As a result, the Court must determine which state's law has the "most significant

---

[58] *See, e.g., Enrique*, 142 A.3d at 511.

[59] *Id.*

[60] La. R.S. § 22:1973.

[61] La. R.S. § 22:1973(B). The last two provisions in the statute defining bad faith deal with an insurer's failure to pay claims under certain conditions, and provide that such failure to pay must be "arbitrary, capricious, or without probable cause" before the conduct rises to the level of bad faith. However, the remaining provisions merely provide a description of the conduct necessary for a finding of bad faith without requiring a showing that the conduct is "arbitrary, capricious, or without probable cause."

[62] La. R.S. § 22:1973 (A), (C).

16

relationship" to the bad faith claim by analyzing the Contract Factors and the general choice of law principles contained in the *Second Restatement*.[63]

It is unclear where the underlying insurance contract was entered into or negotiated.[64] The contract at issue was a Managed Care Organizations Errors and Omissions Liability Policy issued by Homeland to CorVel to insure against risks CorVel faced while operating its PPO network. To that end, the location of the subject matter of the contract would theoretically be wherever a potential claim against CorVel could arise.[65] Similarly, because the nature of the insurance contract was to insure against nationwide risks, it is not clear that the parties contemplated a singular "place of performance" in the contract.[66] With respect to the parties' locations, CorVel is incorporated in Delaware and has its principal place of business in California. Homeland is incorporated in New York and, at the time of filing its Delaware Declaratory Judgment Action, had its principal place of business in Massachusetts.[67] Thus, where there is no obvious location of the subject matter of the contract or place of performance, and where the parties do not share any

---

[63] The Court notes that the parties did not address the Contract Factors. Nevertheless, the Court has sufficient information regarding the underlying insurance contract to apply this test.

[64] *See* Second Restatement § 188(2)(a)-(b).

[65] *See* Second Restatement § 188(d).

[66] *See* Second Restatement § 188(c).

[67] *See* Second Restatement § 188(e). Homeland has not indicated to the Court where its current principal place of business is located.

17

important locations in common, the Court finds that the Contract Factors do not suggest which state has the "most significant relationship" to the bad faith claim.

Therefore, to determine which state has the "most significant relationship" to the bad faith claim, the Court turns to the general choice of law principles contained in the *Second Restatement*.[68] Of these, the Court finds that it is particularly relevant to consider the policies and interests of the states whose law is argued to apply.[69] To this end, the Court notes that Louisiana has a particular interest in the application of Louisiana law to this bad faith claim. The underlying coverage claim was brought in Louisiana by a Louisiana hospital for a violation of a Louisiana statute that does not apply outside Louisiana. Thus, without Louisiana law, the underlying coverage claim giving rise to this bad faith claim would not have existed. Louisiana has an interest in ensuring that insurers faced with coverage claims in Louisiana follow its laws, or face the consequences associated with not doing so.[70]

This view is consistent with the Delaware Supreme Court's opinion addressing the penalty issue. There, the Court observed that there was "very little connection to the State of Delaware" because the "only nexus with the State of

---

[68] *See* Second Restatement § 6.

[69] *See* Second Restatement § 6(2)(c).

[70] *See* La. R.S. § 22:1973; *See also Ferrara, Inc. v. Lafayette Ins. Co.*, 2010 WL 8972263, at *10 (La. Ct. App. Aug. 4, 2010) (stating that the Louisiana Bad Faith Statute's allowance of penalties for an insurer's bad faith conduct "is a vehicle to punish an insurer for such egregious conduct").

Delaware is CorVel's situs of incorporation."[71] By contrast, the Court stated that the "connection this litigation has with the State of Louisiana is much stronger" because the litigation began with a Louisiana hospital alleging a violation of a Louisiana law.[72] Therefore, after considering the Contract Factors and the general principles underlying choice of law determinations from the *Second Restatement*, the Court finds that Louisiana has the "most significant relationship" to the bad faith claim and will apply the Louisiana Bad Faith Statute.

## Discussion

The Louisiana Bad Faith Statute provides in relevant part:

A.  An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both.  Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

B.  Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section:

(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

. . .

C.  In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be

---

[71] *CorVel Corporation v. Homeland*, 112 A.3d at 869.
[72] *Id.*

19

awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. …[73]

Under the Louisiana Bad Faith Statute, the Court must address three questions. First, did Homeland commit bad faith by knowingly misrepresenting a fact or insurance policy provision related to coverage? Second, if Homeland did commit bad faith, what actual damages did CorVel sustain as a result? Third, should the Court or a jury decide whether to impose a discretionary penalty against Homeland and, if it is the Court, what is the appropriate penalty?

## I. Homeland Committed Bad Faith by Knowingly Misrepresenting the Fact that CorVel Reported the Louisiana Arbitration Action in Compliance with the Reporting Requirements of the Homeland Policy.

CorVel argues that Homeland committed bad faith under the Louisiana Bad Faith Statute by knowingly misrepresenting a fact related to coverage. Specifically, CorVel contends that Homeland made a knowing misrepresentation when it stated that CorVel failed to report the Louisiana Arbitration Action in compliance with the reporting requirements of the Homeland Policy. The parties do not dispute any material facts related to Homeland's purported misrepresentation, so the Court will decide the question of Homeland's bad faith as a matter of law.

---

[73] La. R.S. § 22:1973.

With respect to the insured's obligation to report a claim to Homeland, the Homeland Policy provides:

> The Underwriter will pay on behalf of the Insured any Loss which the Insured is legally obligated to pay as a result of any Claim that is first made against the Insured during the Policy Period and reported to the Underwriter either during the Policy Period or in any event within ninety (90) days after the end of the Policy Period…[74]

The Homeland Policy defines "Claim" as "any written notice received by any Insured that a person or entity intends to hold an Insured responsible for a Wrongful Act" committed during the policy period and specifically provides that a "Claim" may be in the form of an arbitration.[75] The Homeland Policy was in effect from October 31, 2005 to December 1, 2007.

On December 4, 2006, CorVel received a letter providing written notice of the intent of the Louisiana Class to initiate a class action arbitration against CorVel for violations of the Louisiana PPO Statute. CorVel provided notice of the claim asserted in the December 4, 2006 letter to Homeland on March 28, 2007. On that day, CorVel's director of legal services, Sharon O'Connor, called Homeland's claims administrator, Virginia Troy, to give notice of the claim. On the same day, O'Connor sent Troy an email with documents related to the claim, including: (1) a copy of the December 4, 2006 letter; (2) an engagement letter confirming CorVel's

---

[74] J.A. at 21.
[75] J.A. at 22.

engagement of counsel in connection with pending litigation and "related arbitration proceeding;" and (3) a letter from CorVel's counsel to the Case Manager for the American Arbitration Association regarding the pending Louisiana Arbitration Action.[76]

Beginning in December 2010, CorVel sought permission from Homeland to settle the Louisiana Arbitration Action.[77] On January 5, 2011, Homeland acknowledged that it received "material that was attached to [Sharon O'Connor's] late March 2007 emails" to Homeland.[78] However, less than a week after acknowledging the March 2007 emails, Homeland filed the Delaware Declaratory Judgment Action in this Court. Homeland sought a declaration that there was no coverage under the Homeland Policy for four reasons, including that CorVel failed to report the Louisiana Arbitration Action in compliance with the reporting requirements of the Homeland Policy.[79]

At the time that Homeland filed the Delaware Declaratory Judgment Action, it knew that CorVel had sent documents related to the Louisiana Arbitration Action

---

[76] *See* J.A. at 47-53.
[77] *See* J.A. at 106 (stating that CorVel asked Homeland to commit to a settlement of up to the limits of the Homeland Policy at a December 22, 2010 teleconference).
[78] J.A. at 106-07.
[79] *See* J.A. at 483; *See also* J.A. 206-207 (denying that CorVel reported the claim in accordance with the requirements of the Homeland Policy in Homeland's Responses to CorVel's Second Set of Discovery Requests).

in March 2007.[80]  In addition, Homeland knew that these documents contained the December 4, 2006 letter initiating the Louisiana Arbitration Action against CorVel. Thus, at the time that Homeland filed the Delaware Declaratory Judgment Action, Homeland knew that a claim was first made against CorVel during the policy period and that CorVel reported the claim to Homeland during the policy period.  Therefore, by claiming that CorVel did not report the Louisiana Arbitration Action in compliance with the reporting requirements of the Homeland Policy, Homeland made a knowing misrepresentation.[81]

Homeland argues that it did not make a knowing misrepresentation because Homeland was making a legal argument, not a factual argument, regarding whether CorVel reported a claim that was "first made" during the policy period.  Homeland contends that regardless of whether CorVel provided actual notice to Homeland of the Louisiana Arbitration Action, such notice would not have been in compliance with the reporting requirements if the claim was actually "first made" against CorVel prior to the policy period of the Homeland Policy.  Homeland's position rests on the idea that, even though the Louisiana Arbitration Action was first brought against

---

[80] J.A. at 106-07.

[81] *See McGee v. Omni Ins. Co.*, 840 So.2d 1248, 1256 (La. Ct. App. 3 Cir. 2003) ("Misrepresentation can occur when an insurer either makes untrue statements to an insured concerning pertinent facts or fails to divulge pertinent facts to the insured.").

23

CorVel in December 2006, it was factually similar to earlier claims brought against CorVel that were made prior to the policy period of the Homeland Policy.

The Court rejects Homeland's argument. The undisputed facts show that Homeland knew at the time of filing the Delaware Declaratory Judgment Action that the Louisiana Arbitration Action was made against CorVel during the policy period of the Homeland Policy. Homeland's argument that the Louisiana Arbitration Action was actually "first made" before the policy period of the Homeland Policy because of its factual similarity with earlier filed claims was a coverage argument unrelated to the factual issue of whether CorVel reported the claim to Homeland.[82] This is consistent with Homeland's own position in the Delaware Declaratory Judgment Action, in which Homeland *separately* argued that coverage was barred by a prior proceedings exclusion in the Homeland Policy and that the claim was "first made" before the policy period of the Homeland Policy.[83]

---

[82] The Louisiana trial court also considered the issue of whether the Louisiana Arbitration Action was made and reported during the policy period of the Homeland Policy separately from the issue of whether coverage was barred because the Louisiana Arbitration Action was factually similar to earlier filed claims. *See Williams*, No. 09-C-5244-C, at 4-5.

[83] *See* J.A. 474-86. Homeland raised four "separate and independent" counts in the Delaware Declaratory Judgment Action. Count I was that the prior proceedings exclusion barred coverage. Count II was that the arbitration claim was "first made" before the Homeland policy period. Count III was that CorVel failed to report the Louisiana Arbitration Action in compliance with the reporting requirements of the Homeland Policy.

Therefore, the Court finds that Homeland committed bad faith by knowingly misrepresenting the fact that CorVel provided notice of the Louisiana Arbitration Action in compliance with the reporting requirements of the Homeland Policy.

**II.    CorVel is Entitled to the Damages It Sustained as a Result of Homeland's Bad Faith Conduct, which Consist of the $9 Million CorVel Paid to Settle the Louisiana Arbitration Action and the Louisiana Class Action.**

The Louisiana Bad Faith Statute provides that an insurer who commits bad faith "*shall* be liable for any damages sustained as a result of the breach."[84]  Thus, once the trial court makes a finding of bad faith, "the trial court must award the plaintiff, in addition to the amount found to be due under the policy, any damages found to have resulted from the insurer's breach."[85]  CorVel does not argue that there is an amount due under the policy.[86]  However, CorVel does argue that it suffered actual damages in the form of the $9 million CorVel paid to settle the Louisiana Arbitration Action and the Louisiana Class Action.  Therefore, this Court must determine the extent of CorVel's actual damages.

The Court finds that CorVel did sustain $9 million in damages as a result of Homeland's bad faith conduct.  In December 2010, CorVel sought permission from

---

[84] La. R.S. § 22:1973(A) (emphasis added).

[85] *Audobon Orthopedic and Sports Medicine, APMC v. Lafayette Ins. Co.*, 38 So.3d 974 (La. Ct. App. 4 Cir. 2010).

[86] CorVel assigned its insurance claim against Homeland to the Louisiana Class, which successfully litigated the coverage issue.

Homeland to settle the Louisiana Arbitration Action for the policy limits of the Homeland Policy.[87] In response, Homeland filed the Delaware Declaratory Judgment Action, seeking a declaration that there was no coverage for the Louisiana Arbitration Action by relying, in part, on its bad faith misrepresentation regarding notice. As a result of Homeland's position in the Delaware Declaratory Judgment Action, which contained Homeland's bad faith misrepresentation, CorVel could not expect coverage from Homeland and faced a potential judgment of approximately $140 million.[88] Therefore, to avoid incurring a significantly higher judgment, CorVel settled the Louisiana Arbitration Action and the Louisiana Class Action for $9 million and an assignment of its insurance claim against Homeland. Thus, the Court finds that there is a direct causal link between Homeland's bad faith conduct and CorVel's payment of $9 million.

Homeland argues that CorVel cannot establish that the $9 million settlement was caused by Homeland's misrepresentation because Homeland also asserted three

---

[87] *See* J.A. at 106 (stating that CorVel asked Homeland to commit to a settlement of up to the limits of the Homeland Policy at a December 22, 2010 teleconference).
[88] *See* J.A. at 810-11. CorVel sent Homeland the Louisiana Class's damages analysis in February 2011 in anticipation of an upcoming mediation. The Louisiana Class alleged 71,172 violations of the Louisiana PPO Statute. The Louisiana PPO Statute provides for an award of "the greater of fifty dollars per day of noncompliance or two thousand dollars." Estimating that the court could award $2000.00 for each violation of the Louisiana PPO Statute, CorVel faced a potential judgment of over $140 million. *See also* J.A. at 105 (providing that a different class action brought under the Louisiana PPO Statute settled for $150 million).

other grounds for denying coverage in the Delaware Declaratory Judgment Action. Homeland's argument suggests that as long as it had any non-frivolous argument for denying coverage in addition to its bad faith misrepresentation, it cannot be found to have caused CorVel's damages. The Court rejects Homeland's argument. The Louisiana Bad Faith Statute is designed, in part, to punish insurers for their bad faith conduct.[89] As a result, Homeland should not be able to claim that CorVel's damages stem from Homeland's other arguments for denying coverage rather than Homeland's bad faith misrepresentation. Homeland committed bad faith in seeking a declaration that there was no coverage. As a result, CorVel settled the claims against it and paid that settlement itself, thereby sustaining damages as a result of Homeland's bad faith denial of coverage. Thus, there is a direct causal link between Homeland's bad faith and CorVel's damages. Under the Louisiana Bad Faith Statute, this Court must award CorVel $9 million in respect of the actual damages it sustained as a result of Homeland's bad faith.

III. **The Court Has the Discretion to Award, and Does Award, a Penalty Against Homeland for its Bad Faith Conduct.**

In addition to the mandatory award of actual damages, the Louisiana Bad Faith Statute provides that an insured "may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five

---

[89] *See Ferrara*, 2010 WL 8972263 at *10.

thousand dollars, whichever is greater."[90]  Unlike the award of actual damages, the award of a penalty under the Louisiana Bad Faith Statute is purely discretionary. CorVel argues that because the penalty is discretionary, the issue should go to a jury to decide.  Thus, the Court must answer two questions with respect to a penalty under the Louisiana Bad Faith Statute.  First, should the Court or a jury decide whether to impose a penalty against Homeland?  Second, if it is the Court, what is the appropriate penalty?

The Court is the appropriate entity to decide whether to impose a penalty against Homeland for its bad faith.  In interpreting the Louisiana Bad Faith Statute, a Louisiana Circuit Court of Appeal stated:

> Once the finder of fact has [found bad faith], the trial court must award the plaintiff … any damages found to have resulted from the insurer's breach.  If no damages are found to have resulted from the breach, the *trial court* may, *in its discretion*, assess against the insurer any amount up to $5,000 as a penalty; conversely, if damages as a result of the breach have been awarded, the *trial court* may, *in its discretion*, also award a penalty of up to twice the amount (200%) of those damages."[91]

Thus, it is within the trial court's discretion to award a penalty against an insurer for bad faith conduct.

As a result, the Court must decide whether to impose a penalty against Homeland for its bad faith, and the appropriate amount of such a penalty.  The Court

---

[90] La. R.S. § 22:1973(C).
[91] *Audobon*, 38 So.3d at 974 (emphasis added).

finds that a penalty is appropriate given that an underlying purpose of the Louisiana Bad Faith Statute is to punish insurers for their bad faith conduct.[92] CorVel seeks the maximum penalty available under the Louisiana Bad Faith Statute, or $18 million. However, the Court finds that it is more consistent with the purposes of the Louisiana Bad Faith Statute and the record in this case to award a penalty in the amount of $4.5 million, or one-half of CorVel's actual damages.

## IV. Homeland's Affirmative Defenses Are Without Merit.

In response to CorVel's motion for summary judgment, Homeland raises several affirmative defenses. Homeland asserts that CorVel's bad faith claim is barred by: (1) the applicable statute of limitations; (2) the compulsory counterclaim rule of Superior Court Rule of Civil Procedure 13(a) ("Rule 13(a)"); (3) *res judicata*; (4) judicial estoppel; and (5) acquiescence. For the reasons discussed below, the Court concludes that Homeland's affirmative defenses are without merit.

### A. CorVel's Bad Faith Claim is Not Barred by the Statute of Limitations.

In Delaware, the general rule is that the forum state's statute of limitations applies, even if another state's law governs the parties' substantive rights.[93] Thus, this Court will apply Delaware's statute of limitations to CorVel's bad faith claim. As previously discussed, a bad faith claim sounds in contract in Delaware,[94] and the

---

[92] *See Ferrara*, 2010 WL 8972263 at *10.
[93] *See TrustCo Bank v. Mathews*, 2015 WL 295373, at *5 (Del. Ch. Jan. 22, 2015).
[94] *See Enrique*, 142 A.3d at 512.

29

statute of limitations for contract claims is three years.[95] Thus, CorVel was required to bring its bad faith claim within three years of it arising.

Homeland argues that CorVel's bad faith claim arose when CorVel could plead damages. To that end, Homeland contends that the limitations period began to run at the latest[96] on June 23, 2011, the date on which CorVel settled with the Louisiana Class for $9 million. As a result, Homeland contends that the limitations period expired on June 23, 2014 and, therefore, that CorVel was outside of the limitations period when it brought its bad faith claim on June 9, 2015.

The Court rejects Homeland's argument. CorVel's bad faith claim did not arise when it settled with the Louisiana Class because CorVel could not incur damages until there was a determination on coverage. Under Louisiana law, bad faith claims are "derivative claims relating to the statutory duties of insurance carriers."[97] Therefore, "[t]o prevail under [the Louisiana Bad Faith Statute], a

---

[95] *See* 10 *Del. C.* § 8106.

[96] Homeland also contends that the limitation period began to run on January 10, 2011, the date on which Homeland filed the Delaware Declaratory Judgment Action with the bad faith misrepresentation. Homeland contends that on this date, CorVel was entitled to demand the statutory penalty of $5,000 under the Louisiana Bad Faith Statute, and therefore, incurred damages. Homeland's position is incorrect. The penalty available under the Louisiana Bad Faith Statute is a discretionary penalty that only becomes available after there has been a finding of bad faith. Thus, CorVel did not immediately incur damages upon Homeland's filing of the Delaware Declaratory Judgment Action.

[97] *Chet Morrison Contractors, L.L.C. v. Onebeacon American Ins. Co.*, 2015 WL 1221616, at *6 (E.D. La. 2015).

30

plaintiff must first have a valid, underlying, substantive claim upon which insurance coverage is based."[98]  As a result, it does not matter that CorVel paid $9 million to the class on June 23, 2011 for statute of limitations purposes, because CorVel could not have had a claim for damages under the Louisiana Bad Faith Statute until it had a valid claim for coverage.[99]  CorVel ultimately brought its bad faith claim on June 9, 2015, and the Louisiana trial court did not find coverage until January 21, 2016. Therefore, CorVel is in compliance with the applicable statute of limitations.

### B. CorVel's Bad Faith Claim is Not Barred by Rule 13(a).

Rule 13(a) provides:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the Court cannot acquire jurisdiction.[100]

Homeland argues that, pursuant to Rule 13(a), CorVel was required to assert its bad faith claim in its responsive pleading in the Delaware Declaratory Judgment Action

---

[98] *Riley v. Sw. Bus. Corp.*, 2008 WL 4286631, at \*3 (E.D. La. 2008).
[99] Homeland contends that CorVel did not need to wait until a final judgment on coverage to bring its bad faith claim because all that is required is that the insured have a valid *claim* to coverage.  To that end, Homeland asserts that CorVel had a valid claim for coverage in 2011 when the Louisiana Class brought its coverage claims against Homeland.  However, CorVel did not have a valid claim to coverage in 2011, as Homeland asserts, because CorVel assigned its insurance claims against Homeland to the Louisiana Class as part of the settlement.
[100] Super. Ct. Civ. R. 13(a).

because it arises from the same "transaction or occurrence that is the subject matter" of Homeland's complaint, that is, Homeland's denial of coverage. CorVel argues that its bad faith claim was not ripe until coverage was determined, which was not until after CorVel filed its responsive pleading. In addition, CorVel argues that Rule 13(a) does not bar its bad faith claim because the relevant prior action, the Delaware Declaratory Judgment Action, had not yet been decided on the merits at the time it brought its bad faith claim.

The Court agrees that CorVel's bad faith claim was not ripe until coverage was determined. As previously mentioned, in order for CorVel to have a cause of action under the Louisiana Bad Faith Statute, it had to have a valid coverage claim.[101] Therefore, the Court finds that CorVel's bad faith claim was not ripe until coverage was determined and, therefore, that CorVel did not need to raise it in its responsive pleading.[102]

In addition, the Court finds that CorVel's bad faith claim is not barred by Rule 13(a) because the Delaware Declaratory Judgment Action had not yet been resolved on the merits at the time CorVel brought its bad faith claim.[103] CorVel brought its

---

[101] *See Riley*, 2008 WL 4286631 at *3.

[102] *See Pontone v. Milso Industries Corporation*, 2014 WL 2439973, at *10 (Del. Ch. May 29, 2014) ("[A] claim for relief that is not ripe at the time a defending party serves its responsive pleading does not qualify as a compulsory counterclaim.").

[103] *See Fields v. Frazier*, 2005 WL 3193820 (Del. Super. Nov. 21, 2005) ("[Rule 13(a)] bars the assertion of a compulsory counterclaim arising from the same subject matter of an earlier action, only where the prior action resulted in a judgment on the

action against Homeland on May 8, 2015 and added its bad faith claim on June 9, 2015. At that time, the Delaware Declaratory Judgment Action had yet to be decided on the merits,[104] and the two cases were ultimately consolidated into the Delaware Consolidated Action on July 7, 2015. Thus, to the extent that the policy underlying Rule 13(a) is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters,"[105] that policy is not disrupted here where the issues are consolidated, and will be resolved, in a single action. Therefore, the Court finds that Rule 13(a) does not bar CorVel's bad faith claim.

### C. CorVel's Bad Faith Claim is Not Barred by Res Judicata.

Under the doctrine of *res judicata*, "a judgment in a prior suit involving the same parties, or persons in privity with them, bars a second suit on the same cause of action."[106] *Res judicata* will bar a claim where a five-part test is satisfied:

> (1) [T]he original court had jurisdiction over the subject matter and the parties; (2) the parties to the original action were the same as those parties, or in privity, in the case at bar; (3) the original cause of action or the issues decided was the same as the case at bar; (4) the issues in

---

merits.") (citing *Brady v. C.F. Schwartz Motor Co., Inc.*, 723 F. Supp. 1045 (D. Del. 1989)).

[104] Homeland argues that the coverage issues which underlie the Delaware Declaratory Judgment Action were resolved on the merits in Louisiana, and therefore, that Rule 13(a) does bar CorVel's bad faith claim. However, Homeland's argument is flawed because the coverage issues were not decided on the merits in Louisiana until January 21, 2016, which was after CorVel brought its bad faith claim in this Court.

[105] *Southern Const. Co. v. Pickard*, 371 U.S. 57 (1962) (referring to nearly identical version of Rule 13(a) found in the Federal Rules of Civil Procedure).

[106] *Foltz v. Pullman, Inc.*, 319 A.2d 38, 40 (Del. Super. 1974).

the prior action must have been decided adversely to the [plaintiff] in the case at bar; and (5) the decree in the prior action was a final decree.[107]

Homeland argues that *res judicata* bars CorVel's bad faith claim in this case because it arises out of the same transaction as the coverage issues in the Louisiana Coverage Action, and the Louisiana Class successfully litigated CorVel's coverage claims in that action.

The Court finds that the all five criteria necessary for *res judicata* to bar a claim are not present in this case. It is true that the Louisiana trial court had jurisdiction over the subject matter and parties in the Louisiana Coverage Action and that the judgment in that action was a final decree. However, it is not necessarily clear that the Louisiana Class was in privity with CorVel or that the coverage issues decided in the Louisiana Coverage Action were the same as the issues in this action. In addition, even if the Court assumes that these two requirements are met, *res judicata* would still not bar CorVel's bad faith claim because the coverage issues in the Louisiana Coverage Action were decided in favor of the Louisiana Class, not adversely to them. Thus, when assuming that the Louisiana Class and CorVel are in privity, *res judicata* cannot bar CorVel's bad faith claim because the issues decided

---

[107] *Dover Historical Soc., Inc. v. City of Dover Planning Com'n*, 902 A.2d 1084, 1092 (Del. 2006).

34

in the prior action were resolved in CorVel's favor. Therefore, *res judicata* does not bar CorVel's bad faith claim.

### D. CorVel's Bad Faith Claim is Not Barred by Judicial Estoppel.

The doctrine of judicial estoppel provides that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not, thereafter, simply because his interests have changed, assume a contrary position."[108] Delaware courts apply the doctrine of judicial estoppel where "(i) 'a litigant advances a position inconsistent with a position taken in the same or earlier legal proceeding' and (ii) 'the court was persuaded to accept the previous argument as a basis for its earlier ruling.'"[109] Homeland contends that judicial estoppel should bar CorVel's bad faith claim here because the Louisiana Class changed its position on when the claims were "first made" against Homeland during the pendency of the Louisiana Coverage Action.[110]

The Court rejects Homeland's argument that CorVel should be judicially estopped from asserting its bad faith claim in this case as a result of coverage

---

[108] *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895).

[109] *In re Rural/Metro Corp. Stockholders Litigation*, 102 A.3d 205, 246 (Del. Ch. 2014) (citing *VIII-Hotel II P Loan Portfolio Hldgs., LLC v. Zimmerman*, 2013 WL 5785290, at *3 (Del. Super. Dep. 19, 2013)).

[110] Specifically, Homeland contends that the Louisiana Class first argued that the claims against CorVel were "first made" during the policy period of the Executive Risk policy before changing its position to argue that the claims were "first made" during the policy period of the Homeland Policy.

arguments made by the Louisiana Class in a separate action. Further, the Court notes that the Louisiana courts considered and rejected identical arguments from Homeland on judicial estoppel in the Louisiana Coverage Action.[111] This Court will follow the Louisiana Court's well-reasoned opinions on this issue.

### E. CorVel's Bad Faith Claim is Not Barred by the Doctrine of Acquiescence.

To succeed on an acquiescence defense under Delaware law, a defendant must show that "(1) the plaintiff remained silent (2) with knowledge of her rights (3) and with knowledge or expectation that the defendant would likely rely on her silence, (4) the defendant knew of the plaintiff's silence, and (5) the defendant in fact relied to her detriment on the plaintiff's silence."[112] Homeland argues that CorVel's bad faith claim should be barred under the doctrine of acquiescence because CorVel did not affirmatively assert its coverage position in between giving notice on March 28, 2007 and its demand for coverage in December 2010. In making this argument, Homeland references a letter sent to CorVel in June 2007, in which Homeland listed claims that had been reported to Homeland and did not include the Louisiana Arbitration Action. Homeland contends that CorVel's failure to correct Homeland following that June 2007 letter constituted acquiescence.

---

[111] *See Williams*, No. 09-C-5244-C, at 2-6; *Williams*, 209 So.3d at 908-09.
[112] *Lehman Brothers Holdings Inc. v. Spanish Broadcasting System Inc.*, 2014 WL 718430, at *10 (Del. Ch. Feb. 25, 2014).

36

The Court rejects Homeland's argument. CorVel met its duty under the Homeland Policy by reporting the Louisiana Arbitration Action to Homeland on March 28, 2007. The Homeland Policy did not require CorVel to demand coverage within a certain time or to correct any of Homeland's misstatements, like that in the June 2007 letter. For that reason, Homeland cannot establish the requirements of an acquiescence defense, and CorVel's bad faith claim is not barred by acquiescence.

## Conclusion

Homeland committed bad faith under the Louisiana Bad Faith Statute by knowingly misrepresenting a fact related to coverage, that CorVel gave notice in compliance with the reporting requirements of the Homeland Policy. As a result, CorVel is entitled to the $9 million in damages it sustained as a result of Homeland's bad faith, and the Court finds that it is consistent with the purposes of the Louisiana Bad Faith Statute to impose a penalty against Homeland in the amount of $4.5 million. In addition, the Court concludes that Homeland's affirmative defenses are without merit. Therefore, summary judgment must be granted in favor of CorVel.

**NOW, THEREFORE, this 5th day of January, 2018, CorVel Corporation's Motion for Summary Judgment is hereby GRANTED IN PART, and Homeland Insurance Company of New York's Motion for Summary Judgment is hereby DENIED IN PART.**

**JUDGEMENT IS HEREBY ENTERED** in favor of CorVel Corporation and against Homeland Insurance Company of New York for damages in the amount of $9 million and a penalty in the amount of $4.5 million.

**IT IS SO ORDERED.**

*Andrea L. Rocanelli*

_____

**The Honorable Andrea L. Rocanelli**